Gene Andrew AUSTAD,
Petitioner-Appellant,

v.

Henry RISLEY and Thomas Sellars,
Respondents-Appellees,

and

Attorney General Mike Greely, Addition-
al Respondent and Appellee.

No. 83–3933.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1984.

Decided July 31, 1984.

Curtis G. Thompson, Jardine, Stephen-
son, Blewett & Weaver, Great Falls, Mont.,
for petitioner-appellant.

Margaret M. Joyce Johnson, Asst. Atty.
Gen., Helena, Mont., for respondents-appel-
lees.

Before WRIGHT, GOODWIN and NOR-
RIS, Circuit Judges.

GOODWIN, Circuit Judge.

Gene Andrew Austad, who is serving a
life sentence plus consecutive terms of
years in Montana upon multiple felony con-
victions, petitioned for habeas corpus relief
claiming that the state had convicted him in
violation of the federal Constitution. He
asserted that because of his mental condi-
tion at the time of trial he was denied due
process and that the pretrial publicity cre-
ated an environment in which the failure of
the state court to change the venue
amounted to a denial of a fair trial. He
asserted a number of other alleged consti-
tutional deficiencies in the state proceed-
ings, all of which were carefully reviewed
by the district court. Austad appeals only
the issues of denial of a change of venue
and fitness to stand trial.

The initial question of Austad's
mental fitness to stand trial was essentially

one of fact. Head injuries sustained by Austad as a result of a high speed police chase left him with residual brain damage. He claimed also to be suffering from amnesia and pain and having difficulty in communicating with his counsel. A comprehensive pretrial hearing was conducted by the state court on the fitness issue. The court compiled a voluminous record of testimony including that of an internist, a neurologist, a clinical psychologist, and a psychiatrist. Austad, his mother and one of his lawyers also testified. The state court found him fit to stand trial according to the federal standards set out in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), and that finding was affirmed by the Montana Supreme Court in *State v. Austad*, Mont., 641 P.2d 1373, 1379 (1982).

Giving the finding on mental fitness the deference due under *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), the district court found no denial of due process. We agree.

Turning to the denial of the motion for a change of venue, it is noteworthy that the rape, robbery, burglary, and homicide attributed to Austad all took place on April 21, 1978, and that because of his injuries and various pretrial delays he was not tried until nearly two years later. He contends, nevertheless, that the pervasive news coverage at the time of the crimes of which he was charged made it impossible for him to receive a fair trial in Great Falls, Montana two years later. The district court considered this constitutional challenge in light of the state court record as a whole and found that Austad had not been denied a trial by twelve impartial jurors. The district court noted that the state trial judge had granted Austad individual voir dire examination and on its own motion had excused any juror who expressed reservations about his or her ability to favor the accused with the presumption of innocence. The voir dire took up some 2,000 pages of transcript and 21 trial days. Counsel and the court questioned 93 prospective jurors and every juror chosen to sit as a trial

juror or as an alternate was passed for cause.

The only act the district judge did not perform which Austad now says entitles him to a new habeas corpus hearing was personally to review tapes of radio and television newscasts and some 92 newspaper clippings. Austad contends that our recent decision in *Harris v. Pulley*, 692 F.2d 1189 (9th Cir.1982), *rev'd* — U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), requires an automatic reversal and remand so the district judge can go through the motions of examining these publications in order to assure himself that the news coverage had not made it impossible to obtain an impartial jury in Great Falls during January, February and March of 1980. *See also Bashor v. Risley*, 730 F.2d 1228 (9th Cir.1984).

■ The recent decision of the Supreme Court in *Patton v. Yount*, — U.S. ——, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) makes it unnecessary to reconsider whether, as appellant contends, *Harris v. Pulley* creates a *per se* rule requiring another habeas hearing in this case. In *Patton*, the pretrial publicity climate was very similar to that alleged in the present case. Indeed, except for the fact that in *Patton* there were two trials in four years, whereas in the present case there was one trial after a delay of nearly two years, most of facts relevant to the change of venue question are indistinguishable. The Supreme Court held that the state trial court's findings of fact on the prejudicial effect of the pretrial publicity were presumptively correct. In our case, both the state trial court and the state Supreme Court addressed the question and found that no juror biased by pretrial publicity had sat on the case. The district judge indicated he had reviewed the entire state court record, failing only to recite that he had read all the clippings. Under *Patton*, he had no duty to read the clippings. The appellant offered no factual evidence in the district court to overcome the presumption that the state court's findings of an absence of juror bias were correct.

Other points presented before the trial court were not renewed on appeal.

Affirmed.

NORRIS, Circuit Judge, dissenting.

I respectfully dissent. The majority today affirms a district court's denial of a petition for habeas corpus despite the fact that no federal court has reviewed the prejudicial pretrial publicity exhibits contained in the state court record.[1] It does so on the authority of the Supreme Court's recent decision in *Patton v. Yount,* —— U.S. ——, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). Yet, the Court's opinion in *Patton* makes it abundantly clear that every federal court which dealt with the case—every tier of the federal judiciary, including the Supreme Court—carefully reviewed the relevant portions of the state court record, including all pretrial publicity exhibits. In the district court, a hearing was held before a magistrate, *id.* at ——, 104 S.Ct. at 2887, and the district court made an "independent review of the record," *Yount v. Patton,* 537 F.Supp. 873, 876 (W.D.Pa.1982). The Third Circuit "independently examined the nature of the publicity surrounding the second trial, the testimony at *voir dire* of the venire as a whole, and the *voir dire* testimony of the jurors eventually seated." *Patton,* —— U.S. at ——, 104 S.Ct. at 2887. Finally, the Supreme Court made a thorough review of the state court record, paying especially careful attention to the pretrial publicity exhibits and the voir dire. *Id.* at ——— ——, 104 S.Ct. at 2889–2890.

Nonetheless, the majority contends that *Patton* requires that we affirm. It founds this contention on two arguments. Neither is persuasive.

First, the majority argues that since the Supreme Court held in *Patton* that a state trial court's findings concerning the prejudicial effect of pretrial publicity are presumptively correct and since appellant offered no factual evidence in the district court to overcome this presumption, the district court "had no duty to read the [publicity] clippings." *Supra* at 429.

The majority's reasoning is faulty. It is true that the Supreme Court's decision in *Patton* requires that in a habeas corpus proceeding a district court show deference to a state court's findings concerning the impartiality of a jury. "[T]he trial court's finding of impartiality [may] be overturned only for 'manifest error.'" *Patton,* at ——, 104 S.Ct. at 2889 (citing *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961)). But the Supreme Court did not mandate federal court abdication. The Court's opinion makes it abundantly clear that the relevant portions of the state court record must still be scrutinized.

The Court could not have done otherwise. As the Court's opinion noted, *id.* at ——, 104 S.Ct. at 2892, 28 U.S.C. § 2254(d), which governs federal habeas review of state court findings of fact, states that the state court findings are accorded a presumption of correctness only if they are "fairly supported by the record." 28 U.S.C. § 2254(d)(8). A federal court, of course, can not determine whether a state court finding is "fairly supported by the record" unless it reviews the relevant portions of the record.

More subtlely, the majority implies that because the Supreme Court rejected the prejudicial publicity claim presented in *Patton* and because the facts of that case bear

---

1. No federal court has reviewed the ninety-two pretrial publicity exhibits contained in the state court record. The majority attempts to obscure this fact. While the majority does state that "[t]he only act the district judge did not perform ... was personally to review tapes of radio and television newscasts and some 92 newspaper clippings," *supra* at 429, it inexplicably claims that "[t]he district court considered [appellant's] constitutional challenge in light of the state court record *as a whole,*" *id.* (emphasis added),

and that "[t]he district judge indicated he had reviewed the entire state court record, failing only to recite that he had read all the clippings," *id.* at 429. These contentions are irreconcilable with the district court's Memorandum and Order which shows that the district court did not review the ninety-two pretrial publicity exhibits contained in the state court record and with the State's admission that these exhibits were not before the district court. Appellee's Answering Brief at 28.

some resemblance to those of this case, appellant's claim must also fail. The majority emphasizes that "[i]n *Patton,* the pretrial publicity climate was very similar to that alleged in the present case. Indeed, ... most of the facts relevant to the change of venue question are indistinguishable." *Supra* at 429.

In effect, the majority is arguing that the federal courts need not review the relevant portions of the state court record because the similarity between the facts here and those in *Patton* indicates that appellant will ultimately lose on his prejudicial publicity claim. This analysis is, I submit, seriously flawed. How can we say that this case is factually "indistinguishable" from *Patton* and that appellant is sure to lose unless and until a federal court conducts a review of all the relevant portions of the state court record? The very purpose of federal court review is to ensure that such assessments of the merits are based on something more than an uncritical acceptance of the state court's decision. The majority's approach turns a habeas corpus proceeding into little more than a rubber stamp. ·

In short, the majority misperceives the significance of the Supreme Court's decision in *Patton.* As a result, the majority's conclusion that it may affirm the district court's denial of appellant's habeas corpus petition despite the fact that no federal court has reviewed the pretrial publicity exhibits contained in the state court record is simply wrong.

I believe that the appropriate course in this case is remand to the district court for reconsideration in light of a review of the pretrial publicity exhibits contained in the state court record. Our court has repeatedly held that when considering a petition for a writ of habeas corpus, a district court must "make its determination as to the sufficiency of the state court findings from an independent review of the record, or otherwise grant a hearing and make its own finding on the merits." *Turner v. Chavez,* 586 F.2d 111, 112 (9th Cir.1978). *See also Pierre v. Thompson,* 666 F.2d 424,

427 (9th Cir.1982); *Patterson v. Warden,* 624 F.2d 69, 79 (9th Cir.1980). In fact, in *Harris v. Pulley,* 692 F.2d 1189 (9th Cir. 1980), *rev'd on other grounds,* —— U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), we applied this well-settled rule to a habeas corpus petition raising a prejudicial pretrial publicity claim similar to the one presented in this case, holding that "where prejudicial pretrial publicity is alleged, the relevant parts of the state court record include, at a minimum, copies of newspaper articles and, if available, any transcripts of television and radio broadcasts." *Id.* at 1200. Because the majority ignores this command, I dissent.