**Gene Andrew AUSTAD,
Petitioner-Appellant,**

v.

**Henry RISLEY and Thomas Sellers,
Respondents-Appellees,**

**and**

**Attorney General Mike Greely, Additional Respondent and Appellee.**

**No. 83–3933.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13; 1984.

Decided May 23, 1985.

Boochever, Circuit Judge, concurred and filed opinion in which Hug, Circuit Judge, joined.

Alarcon, Circuit Judge, dissented and filed opinion.

Curtis C. Thompson, Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., for petitioner-appellant.

Margaret M. Joyce Johnson, Asst. Atty. Gen., Helena, Mont., for respondents-appellees.

Before BROWNING, Chief Judge, WALLACE, ANDERSON, HUG, TANG, SKOPIL, ALARCON, POOLE, NELSON, BOOCHEVER, and BEEZER, Circuit Judges.

POOLE, Circuit Judge.

Gene Austad was convicted by a jury in a Montana state court of deliberate homicide, robbery, sexual intercourse without consent and aggravated burglary. He was sentenced to life imprisonment on the conviction of deliberate homicide, and to consecutive forty year terms on each of the other three charges. After exhausting his state remedies, Austad filed a petition for writ of habeas corpus in the district court claiming that he had been denied a fair trial because the great volume of pretrial publicity created an environment of hostility which made it impossible to obtain an unbiased jury in the area of Great Falls, Montana. The petition alleged a number of constitutional deficiencies which the district court reviewed, all of which were denied. Austad has appealed only the order denying his claims involving the change of venue and the ruling that he was mentally fit to stand trial.

Specifically Austad argues that the district court's findings that he was not denied a fair trial due to prejudicial publicity are insufficient because the court did not make an independent examination of the

exhibits in the state court record which included the publicity.

The crimes charged all took place on April 21, 1978, but because of severe injuries which Austad sustained while fleeing from the police, and because of various pretrial delays, his trial did not take place until almost two years later. The petition contends that the pervasive news coverage following commission of the offenses made it impossible to receive a fair trial by jury even with the passage of time, and therefore due process required that there be a change of venue. The district court considered this constitutional challenge in light of the whole state court record presented and found that Austad had not been denied trial by an impartial jury. The district judge noted that the state trial court had granted Austad individual *voir dire* examination and, on its own motion, had excused any juror who expressed reservations about the ability to accord the accused the benefit of the presumption of innocence. The *voir dire* proceedings took up some 2,000 pages of transcript over 21 trial days. Counsel and the court questioned 93 prospective jurors and every person finally seated as a trial juror or as an alternate was passed for cause. The district judge concluded that the procedures adopted by the trial judge were reasonably calculated to reveal any hostility or prejudice and that Austad had not shown that those factual determinations were not thoroughly supported by the record, and that his trial had been fair. A divided panel of this court affirmed the district court. *See* 739 F.2d 428 (9th Cir.1984). We granted the petition to rehear this case en banc, and withdrew the original opinion. *See* 743 F.2d 739 (9th Cir.1984).

We affirm.

*Presumption of Correctness*

As a threshold matter, we must determine whether the findings of the state court challenged in a habeas proceeding are factual in nature. If they are, 28 U.S.C. § 2254(d) requires a federal habeas court to accord such findings a presumption of correctness unless the petitioner establishes certain defects to overcome the presumption. 28 U.S.C. § 2254(d). In this appeal Austad challenges the findings of the state trial court that he was fit to stand trial and that the jurors who tried him were impartial and not biased by prejudicial pretrial publicity.

■ The Supreme Court has clearly established that the determination of a juror's partiality or bias is a factual determination to which section 2254(d)'s presumption of correctness applies. "[I]t is plainly [an issue] of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, —— U.S. ——, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984).

The determination of Austad's fitness to stand trial is also a factual determination. *See Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam). Section 2254(d)'s presumption of correctness applies here as well.

*Fitness to Stand Trial*

Austad claimed that he was not mentally fit to stand trial because he sustained head injuries as a result of a high speed police chase which left him with residual brain damage. He claimed also to be suffering from amnesia and pain and having difficulty in communicating with his counsel. A comprehensive pretrial hearing inquiring into Austad's mental condition was conducted by the state court. The court compiled a voluminous record of testimony including that of an internist, a neurologist, a clinical psychologist, and a psychiatrist. Austad, his mother, and one of his lawyers also testified. The state court found him fit to stand trial according to the federal standards set out in *Dusky*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 and that finding was affirmed by the Montana Supreme Court in *State v. Austad*, 197 Mont. 70, ——, 641 P.2d 1373, 1379 (1982).

■ Giving to the trial court's findings of mental fitness the deference due under 28 U.S.C. § 2254(d) and *Sumner v. Mata*,

449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), the district court found no denial of due process. Austad had not overcome the presumption of correctness of the state court's determination.

### Burden of Production of State Record

Austad seeks a new habeas corpus hearing because, although the district judge had before him for review the entire transcript of the *voir dire* proceedings, he did not have and did not review the 92 newspaper clippings and tapes or transcripts of radio and television newscasts which were submitted in the state proceedings as exhibits and which constitute the pretrial publicity of which Austad complains. Austad did not himself produce the exhibits, nor did he request the district court to order their production, or to expand the record to include them as is permitted under Rule 7 of the Rules Governing § 2254 Cases in the United States District Courts. Instead, he bases his claim of error upon our decision in *Harris v. Pulley*, 692 F.2d 1189 (9th Cir.1982) (per curiam), *rev'd on other grounds,* —— U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), which he construes as requiring automatic reversal and remand so that the district judge may examine the missing exhibits to determine the sufficiency of the trial court's ruling concerning the obtaining of an impartial jury in the vicinage of Great Falls, Montana, at the time of trial. *See also Bashor v. Risley,* 730 F.2d 1228 (9th Cir.) *cert. denied,* —— U.S. ——, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). The state responds that it was the petitioner's duty under 28 U.S.C. § 2254(d) to establish by convincing evidence that the factual determinations of the state court which he challenges were erroneous and to present any part of the record necessary to support his case.

We took this case en banc to reconsider whether a federal court, reviewing a habeas corpus petition under 28 U.S.C. § 2254, is required *sua sponte* to call up for independent review specific portions of a state court record pertinent to the petitioner's claim where the petitioner has neither produced them nor shown himself unable to do so. In particular, our question is whether the district court had a duty in Austad's case to order production of the pretrial publicity exhibits from the state court where the petitioner did not claim an inability to produce them.

In *Harris v. Pulley* the petition alleged, as does Austad here, that pervasive pretrial publicity and the trial court's denial of his motion for change of venue made a fair trial impossible and denied him due process. The district court on habeas corpus agreed with the Supreme Court's conclusion that the pretrial publicity had not required a change of venue and had not resulted in denial of a fair trial. Harris had not produced any of the articles or broadcasts; nor, unlike Austad's case, had the district court examined the transcript of the *voir dire* examination. The *Harris* court held that

> Unless it is shown that the district court examined all relevant parts of the state court record, this court cannot affirm a district court's judgment dismissing a habeas petition. (Citation omitted.)

692 F.2d at 1199–1200. The court stated that, when a petitioner alleges prejudicial pretrial publicity, "the relevant parts of the state court record include, at a minimum, copies of the newspaper articles and, if available, any transcripts of television and radio broadcasts." *Id.* at 1200. Citing *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961), the per curiam court stated flatly that "the district court should, if necessary, request and examine all relevant parts of the state court record to determine whether the record supports the state court's findings." *Id.* While acknowledging that the Supreme Court's decision in *Sumner v. Mata,* 449 U.S. 539, 550, 101 S.Ct. 764, 770, 66 L.Ed.2d 722 (1981), "requires a federal court in a habeas proceeding generally to accord a statutory presumption of correctness of state court findings," the *Harris* court said, "but such a presumption is not required if the federal court concludes that findings are not fairly supported by the record." 692 F.2d at 1200.

In *Harris v. Pulley,* this court announced a rule that unless the district court in fact examined the entire "relevant" record of state court proceedings, there could be no legal determination that the state court findings are supported by the record. The *Harris* court did not consider the statutory language of 28 U.S.C. § 2254 in thus mandating the district court's duty. The opinion purports to follow prior law of this circuit, but the circuit precedents which it cited had also not considered the statutory language. *See, e.g., Turner v. Chavez,* 586 F.2d 111, 112 (9th Cir.1978) (per curiam); *Griff v. Rhay,* 455 F.2d 494, 495 (9th Cir.1972) (per curiam). *Turner* and *Griff,* as did *Irvin v. Dowd,* looked to Supreme Court opinions rendered under the original Habeas Corpus Act of 1867, and were decided before Congress enacted section 2254(d) for the purpose of alleviating a prime source of friction between state and federal courts.[1]

No decision of the United States Supreme Court and only *Harris v. Pulley* in this circuit specifically addresses the issue before us. *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), a leading case on the subject, holds that a district court has the power to compel production of the state court record and imposes an obligation to scrutinise it once it is received, but does not impose a duty to request the record *sua sponte. Id.* at 316, 83 S.Ct. at 758.

Attached to the petition in *Jennings v. Ragen,* 358 U.S. 276, 79 S.Ct. 321, 3 L.Ed.2d 296 (1959) (per curiam), were a copy of the state supreme court opinion affirming his conviction and other documents, but not the state court record. *Id.* at 276, 79 S.Ct. at 321. The district court reviewed the included documents, concluded that the petitioner's rights had not been

violated, and dismissed the petition without a hearing. *Id.* at 277, 79 S.Ct. at 321. The court of appeals dismissed the appeal. *Id.* The Supreme Court vacated and remanded, however, because "the District Court erred in dismissing this petition without first satisfying itself, *by an appropriate examination of the state court record, that this was a proper case for the dismissal* of petitioner's application without a hearing." *Id.* (emphasis added). In its four-paragraph decision, however, the Court did not elaborate on the scope of an "appropriate" examination or on what constituted the district court's "satisfaction" in a "proper case." Thus, *Jennings* sheds no direct light on the issue before us.

The Court decided *Jennings* before the 1966 amendment to the habeas corpus statute. *See* Pub.L. No. 89–711, § 2, 80 Stat. 1105 (1966). Thus, to determine whether the district court must order the state court materials on its own motion, we must turn first to the statutory language. Section 2254 states in part:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court * * *, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

[Listing 7 circumstances constituting procedural or substantive defects.]

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination

---

1. In *Sumner v. Mata,* 449 U.S. at 550, 101 S.Ct. at 771, the Court said:

But it is clear that in adopting the 1966 amendment, Congress in § 2254(d) intended not only to minimize the inevitable friction but also to establish that the findings made by the state-court system "shall be presumed to be correct" unless one of seven conditions set forth in § 2254(d) was found to exist by the

federal habeas court. If none of those seven conditions were found to exist, or unless the *habeas* court concludes that the relevant state-court determination is not "fairly supported by the record," "the burden shall rest upon the applicant to establish *by convincing evidence* that the factual determination by the State court was erroneous."

(Emphasis in original.)

of the sufficiency of the evidence to support such factual determination, is produced as provided for [in section 2254(e) ], and the Federal court on a consideration of *such* part of the record as a whole concludes that *such* factual determination is not fairly supported by the record[.]

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, [unless one or more of the above 7 circumstances appear; or unless the court finds under subparagraph 8] that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish *by convincing evidence* that the factual determination by the State court was erroneous.

(e) If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, *the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination. If the applicant, because of indigency or other reason[,] is unable to produce* such part of the record, *then the State shall produce such part of the record and the Federal court shall direct the State to do so* \* \*.

(Emphasis supplied.)

■ We read the words of the statute as a clear statement that the applicant must produce "that part of the record pertinent" to his challenge of a state court's factual determination or assert that, "because of indigency or other reason," he is unable to do so. Only then is the district court required to direct the State to produce the record. 28 U.S.C. § 2254(e). If an applicant who is able fails to produce the record,

then he fails to carry his burden of establishing that the state court's factual determination is not fairly supported by the record. *United States ex rel. Green v. Greer,* 667 F.2d 585, 589–90 (7th Cir.1981); *Thomas v. Gaffney,* 540 F.2d 251, 254 (6th Cir.1976), *cert. denied,* 429 U.S. 1078, 97 S.Ct. 823, 50 L.Ed.2d 798 (1977).

Of course, the district courts have ample discretion to permit or on their own motion to require the production of relevant parts of the record or other materials pursuant to the habeas rules, particularly Rules 5, 6, 7 and 11;[2] and they often do so. But to compel district judges invariably to identify and order production of those portions of the state record which may or may not support a habeas petition would not only shift to the court a responsibility which the asking party should bear, but would saddle upon already overburdened district courts a record-searching load of enormous dimension. In sensible contrast, the statute directs the petitioner to produce the record basis of his complaint or simply to say why he cannot do so, before the court is charged with examining it.

As we have set forth above, we believe this position is consistent with *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The Supreme Court stated that the 1966 amendments in section 2254(d) were intended by Congress as a limit on the jurisdiction of federal trial and appellate courts to review the factual determinations made by state courts. *Id.* at 547 n. 2, 101 S.Ct. at 769 n. 2. The Court said that Congress intended those limitations to alleviate friction between state and federal courts, *id.* at 550, 101 S.Ct. at 770, and that "it is the duty of [the Supreme Court] to see to it that the jurisdiction \* \*, which is defined and limited by statute, is not exceeded." *Id.* at 548 n. 2, 101 S.Ct. at 769 n. 2, *quoting Louisville & Nashville*

---

**2.** Rule 5 addresses the power of the district court to order the respondent to provide additional portions of state court transcripts; Rule 6 provides for discovery; Rule 7 for expansion of the record to include additional materials; and

Rule 11 provides that the Federal Rules of Civil Procedure may be applied to habeas petitions filed under the habeas rules. Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254.

*Railroad Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908).

■ Although the Court in *Sumner v. Mata* did not specifically address the allocation of the burden of production under section 2254(e), the rationale of decision supports a literal interpretation of that section. We conclude that an unambiguous interpretation of section 2254(e) justifies a literal application of the production requirements. Viewed in that light the district court was not obliged to obtain the publicity exhibits before ruling on Austad's petition, where he neither presented the exhibits nor stated that he was unable to do so.

A contrary interpretation would also render superfluous some of the Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254. For example, Rule 4 states that a district judge shall summarily dismiss a petition if, upon examination, it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief. *Id.,* Rule 4. Moreover, Rule 5 clearly states that, if the district court requires the state to answer the petition, it *may* order production of further portions of the transcript on its own motion or upon request of the petitioner. *Id.,* Rule 5 (emphasis added.) *See United States ex rel. Green v. Greer,* 667 F.2d 585, 590 (7th Cir.1981). We have already made references to Rules 6, 7, and 11. The overall provisions of these rules are inconsistent with imposition of a duty upon the district court to obtain a record which the statute requires the petitioner to provide.[3]

---

3. Rule 5 makes clear that the burden of producing the record does not lie heavily upon petitioner's shoulders. It provides in relevant part that

The answer shall indicate what transcripts (of pretrial, trial, sentencing, and post-conviction proceedings) are available, when they can be furnished, and also what proceedings have been recorded and not transcribed. There shall be attached to the answer such portions of the transcripts as the answering party deems relevant. The court on its own motion or upon request of the petitioner may order that further portions

*Denial of Fair Trial*

■ The district court did not err in concluding, on the record before it, that Austad was not denied a fair trial. Even though the publicity exhibits were not before the district court, the subject matter of the extensive *voir dire* questions clearly embraced all of the areas of concern to Austad, the state and the state court trial judge, all of which were carefully reviewed by the district court. Moreover, the extensive *voir dire* examination of each prospective juror out of the presence of other prospective jurors, the seating of jurors whom defense counsel had passed for cause, and the two years which passed between the events in controversy and the commencement of the trial all support the state court's conclusion that a change of venue was not necessary to provide Austad with a fair trial. Austad presents nothing to overcome the presumption of correctness which attaches to a state court's determination of factual issues mandated by 28 U.S.C. § 2254(d) and *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Any contrary implications in *Harris v. Pulley* are disapproved. Accordingly, the district court's ruling will be affirmed.

*Conclusion*

We have herein reconsidered our decision in *Harris v. Pulley* and have disapproved the holding of that case with respect to the responsibility for producing a state court record in habeas cases insofar as *Harris* held that the district court has a duty *sua sponte* to obtain and examine the trial record where the petitioner has not shown his inability to produce. The petitioner

of the existing transcripts be furnished * *.

Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254.

The Advisory Committee Notes state that Rule 5's requirement that the answer state what transcripts are available "will serve to inform the court *and petitioners* as to what factual allegations can be checked against the record." *Id.,* Advisory Committee Note to Rule 5 (emphasis supplied). Petitioner may then request additional portions of the transcript if respondent has not provided the portions he deems relevant. *Id.*

made no such showing in this case.[4] Since, however, he may have relied on *Harris'* precedent in failing to make production of the pretrial publicity exhibits, our affirmance of the district court's denial of Austad's petition ought not be deemed to constitute a bar, on grounds of abuse of the writ, to his presenting a new petition, should he be so advised, tendering the claim of adverse pretrial publicity in which he would be entitled to supplement the record with the exhibits, as provided by Title 28 U.S.C. § 2254. *See Sanders v. United States*, 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963), *codified in* Rules Governing § 2254 Cases, Rule 9(b), 28 U.S.C.A. foll. § 2254 (denial of prior application for federal habeas corpus controlling only if prior determination was on the merits); *Morgan v. United States*, 696 F.2d 1239, 1240 (9th Cir.1983) (same).

With such qualification, the judgment of the district court shall stand AFFIRMED.

BOOCHEVER, Circuit Judge, concurring, with whom HUG, Circuit Judge, joins:

Austad was represented by counsel. We do not have before us a case involving a pro se litigant, which might require that the district court construe section 2254(d) less strictly against the petitioner and further consider possible constitutional violations as suggested by Judge Alarcon. *Cf. Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (holding pro se plaintiff to less stringent standards of pleading than plaintiff represented by counsel); *Bashor v. Risley*, 730 F.2d 1228, 1234 (9th Cir.) (*Haines* rule applies to pro se habeas petitions), *cert. denied,* —— U.S. ——, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). As illustrated by the array of hypothetical considerations ruled on by the majority in footnote 4, appropriate judicial restraint dictates that we reserve deciding the application of 28 U.S.C. § 2254(d) in cases involving pro se litigants until presented with a specific controversy. With this limitation I concur in Judge Poole's opinion.

ALARCON: Circuit Judge, dissenting:

I respectfully dissent.

The majority has concluded that a federal court may deny a state prisoner's peti-

4. The concern expressed by the concurrence, and the suggestion that the rule should be different for pro se litigants, are misplaced. Section 2254, as we construe it, does not impermissibly burden applicants, whether with or without counsel. The suggested distinction between pro se and represented petitioners ignores the clear statutory language which does not distinguish between the two and which contemplates that many petitioners will be, at least initially, without counsel. We do not view the habeas provisions or rules as imposing separate requirements for pro se and represented applicants. That is why the statute provides in very plain language that if a petitioner is indigent (personally without counsel) or for any "other" reason unable to produce, the court will see to production. But obviously, somehow that inability must be stated. And the statute places responsibility for production on the petitioner both to identify, and to produce what he wants unless he is unable to do so. 28 U.S.C. § 2254(e).

Inability may be established by the mere statement. But the statute does not require the court initially to call up an entire or partial state record until some reason for doing so is brought to its attention. That means that the one seeking aid must inform the court that he wants help in proving his claim. Indeed, the habeas corpus form of petition requires the petitioner to state his claim with particularity. *See* Model Form for Use in Applications for Habeas Corpus under 28 U.S.C. 2254, 28 U.S.C.A. foll. § 2254. This is not the trial itself but a collateral attack upon a standing conviction. It is a safe assumption that the petitioner will generally know and can broadly identify the basis of his complaint since he was a party to the state proceeding, was present at trial, and, in most instances, raised the same objection to the state courts along the way towards exhaustion of his state remedies.

Moreover, the trial judge has ample discretion to require, once informed, that a sufficient portion of the record be produced so that the court can make an intelligent decision. This was true in the case at bar: the trial judge read the voir dire transcript although not the exhibits. A review of the voir dire questioning and of the facts of the case convinced him that nothing had been identified in the exhibits which was not covered by the voir dire. There is no reason to assume that in reviewing the record trial judges will not have the competence to know or the will to act if the petition or the circumstances show that a part of the record which is missing is obviously needed to determine whether the petitioner's constitutional rights were violated.

tion for a writ of habeas corpus alleging a denial of his federal constitutional right to a fair trial because of prejudicial pretrial newspaper articles and radio and television newscasts without making an independent examination of the exhibits introduced in the state court to establish the prejudicial nature of the media coverage. In so doing, the majority rejects the law of this circuit most recently expressed in *Harris v. Pulley*, 692 F.2d 1189 (9th Cir.1982), *rev'd on other grounds*, — U.S. —, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) and concludes that it is no longer compelled to follow the decisions of the United States Supreme Court in *Jennings v. Ragan*, 358 U.S. 276, 79 S.Ct. 321, 3 L.Ed.2d 296 (1959) (per curiam) and *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

The majority tells us it is free to disregard these decisions, in spite of the fact that they were decided on due process and fair trial grounds, because Congress has amended the Habeas Corpus Statute. I fail to see how Congress can repeal the Fifth and Sixth Amendments by simply amending a federal statute.

The majority then proceeds to determine the merits of Austad's claim that he was denied a fair trial because of prejudicial pretrial publicity without making an independent examination of the exhibits before the state court. The majority concludes that "a change of venue was not necessary to provide Austad with a fair trial." (Majority Opinion, page 1354). Having so concluded, the majority inconsistently qualifies its holding affirming the judgment by directing the district court to permit the filing of a new writ of habeas corpus setting forth the same issue (denial of a fair trial because of adverse publicity), notwithstanding the fact that this court has decided the merits of Austad's claim—i.e. a change of venue was not necessary for a fair trial—and determined the law of the case. The majority has failed to give any guidance to the district court regarding its duties should a second petition for a writ of habeas corpus be filed containing a request for the production of the state court exhibits. If, after examination, the district court

determines that these exhibits show that the pretrial publicity was prejudicial, must the district court proceed to consider the responses of the prospective jurors to the voir dire examination, or is it precluded from doing so by the law of the case?

I would reverse the judgment. The Supreme Court has attempted to make clear that determination of a federal constitutional claim by a state prisoner cannot be made by a reviewing court without an independent examination of the relevant exhibits introduced at the *state* court proceedings.

In the following analysis, I have set forth the applicable law concerning the responsibility of the state trial court, and each federal court, when faced with a claim that a change of venue was compelled because of prejudicial pretrial publicity.

## I

### TRIAL COURT'S DUTY WHEN PREJUDICIAL PUBLICITY IS ALLEGED

Where a defendant claims that he will be denied a fair trial because of prejudicial pretrial publicity, the trial court must examine the media accounts to determine if the publicity is prejudicial. *See United States v. Bailleaux*, 685 F.2d 1105, 1108–09 (9th Cir.1982); *United States v. Abascal*, 564 F.2d 821, 833 (9th Cir.1977), *cert. denied*, 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1978). If the publicity is not prejudicial, the inquiry stops. *See, e.g., Dobbert v. Florida*, 432 U.S. 282, 302–03, 97 S.Ct. 2290, 2302–03, 53 L.Ed.2d 344 (1977) (Court determined that publicity was not prejudicial).

If the publicity is prejudicial, the trial court's duties are governed by *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). In *Sheppard, supra*, the Court concluded, after independently examining the news accounts, that the trial court's failure to take precautions against pretrial publicity deprived the petitioner of a fair trial. *Sheppard*, 384 U.S. at 355, 86

S.Ct. at 1518. *Sheppard* imposed an obligation on trial courts to ensure that prejudicial publicity does not deprive the accused of an impartial jury. *Id.* at 362, 86 S.Ct. at 1522. Similarly, this court requires a trial judge to exercise great care in all aspects of the case relating to publicity that might tend to defeat or impair the accused's right to a fair trial. *See United States v. Giese,* 597 F.2d 1170, 1183 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979); *United States v. Abascal,* 564 F.2d 821, 833 (9th Cir.1977), *cert. denied,* 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1978); *Farr v. Pitchess,* 522 F.2d 464, 468 (9th Cir.1975). *See also CBS v. United States Dist. Ct. For C.D. of California,* 729 F.2d 1174, 1180 (9th Cir.1983) (holding that the trial court must examine the media accounts and analyze its impact when considering a prior restraint). Where there is a reasonable likelihood that prejudicial publicity prior to trial will prevent a fair trial, the trial judge must either: continue the case until the publicity abates; transfer the case to another county less permeated with publicity; or order sequestration of the jury. *Sheppard,* 384 U.S. at 363, 86 S.Ct. at 1522. The trial court must also conduct or allow a *voir dire* examination of potential jurors concerning their exposure to prejudicial publicity. *See id.* at 357, 86 S.Ct. at 1519.

The Supreme Court has also cautioned that juror statements of impartiality during the *voir dire* examination are not necessarily dispositive. *Id.* at 351, 86 S.Ct. at 1516. When jurors are exposed to prejudicial publicity, the trial court has a duty to probe beyond the jurors' assurances that they will not be influenced by the media accounts. *See id.; Marshall v. United States,* 360 U.S. 310, 312–13, 79 S.Ct. 1171, 1172–73, 3 L.Ed.2d 1250 (1959) (per curiam). The *voir dire* examination, therefore, must not simply call for the jurors' subjective assessment of their own impartiality, and it must not be so general that it fails to probe the possibility of prejudice. *United States v. Giese,* 597 F.2d 1170, 1183 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979); *United*

States v. Polizzi,* 500 F.2d 856, 879 (9th Cir.1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975); *Silverthorne v. United States,* 400 F.2d 627, 638 (9th Cir.1968).

II

DUTY OF REVIEWING COURT WHEN PREJUDICIAL PRETRIAL PUBLICITY IS ALLEGED

In reviewing a challenge to the fairness of a trial on the grounds of prejudicial publicity, the reviewing court must first independently examine the record to determine if the publicity was prejudicial. *See Sheppard,* 384 U.S. at 362, 86 S.Ct. at 1522. If the media reports were not prejudicial, then the claim must fail. *See Dobbert,* 432 U.S. at 302–03, 97 S.Ct. at 2302–03; *Evans v. State of Arizona,* 410 F.2d 1122, 1124 (9th Cir.1969). Those courts that have reviewed claims of the denial of a fair trial due to pretrial publicity have independently examined the exhibits containing news reports about the case for volume, content, and timing to determine if it was prejudicial. *See Patton v. Yount,* —— U.S. ——, 104 S.Ct. 2885, 2889–90, 81 L.Ed.2d 847 (1984); *Murphy v. Florida,* 421 U.S. 794, 802–03, 95 S.Ct. 2031, 2037–38, 44 L.Ed.2d 589 (1975); *Estes v. Texas,* 381 U.S. 532, 536, 85 S.Ct. 1628, 1629, 14 L.Ed.2d 543 (1965); *Rideau v. Louisiana,* 373 U.S. 723, 724–25, 83 S.Ct. 1417, 1418–19, 10 L.Ed.2d 663 (1963); *Irvin v. Dowd,* 366 U.S. 717, 725, 81 S.Ct. 1639, 1644, 6 L.Ed.2d 751 (1961); *Bashor v. Risley,* 730 F.2d 1228, 1234–35 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984); *United States v. McDonald,* 576 F.2d 1350, 1354 (9th Cir.), *cert. denied,* 439 U.S. 927, 99 S.Ct. 312, 58 L.Ed.2d 320 (1978); *United States v. Green,* 554 F.2d 372, 376 (9th Cir.1977); *United States v. Robinson,* 546 F.2d 309, 311–12 (9th Cir.1976), *cert. denied,* 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 597 (1977). *See also Martin v. Warden, Huntingdon State Corr. Inst.,* 653 F.2d 799, 802–05 (3d Cir.1981), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1019, 71

L.Ed.2d 306 (1982); *United States v. Chapin*, 515 F.2d 1274, 1288 (D.C.Cir.), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975).

If the publicity was prejudicial, the reviewing court must then examine the transcripts of the *voir dire* examination to make an independent determination that the *voir dire* was adequate to assure an impartial jury. *See Patton v. Yount*, 104 S.Ct. at 2889–90; *Murphy*, 421 U.S. at 800–02, 95 S.Ct. at 2036–37; *Sheppard*, 384 U.S. at 357, 86 S.Ct. at 1519; *Irvin*, 366 U.S. at 723, 81 S.Ct. at 1642; *Bashor*, 730 F.2d at 1234; *McDonald*, 576 F.2d at 1354–55. Moreover, the reviewing court cannot accept the jurors' assurances of impartiality as conclusive. *See Murphy*, 421 U.S. at 800–02, 95 S.Ct. at 2036–37 (Juror's assurances that he can lay aside his opinion and render a verdict based on evidence presented in court cannot be dispositive of the accused's rights; juror indicia of reliability may be disregarded where the atmosphere is sufficiently inflammatory); *Irvin*, 366 U.S. at 725–28, 81 S.Ct. at 1644–46 (Court looked beyond *voir dire* statements in assessing impartiality in light of pressures on jurors to declare impartiality). Reviewing courts thus "have the duty to make an independent evaluation of the circumstances [in assessing juror impartiality]." *Sheppard*, 384 U.S. at 362, 86 S.Ct. at 1522. *See also, Polizzi*, 500 F.2d at 879; *Silverthorne*, 400 F.2d at 637–38.

The majority purports to find support for its views in *Patton v. Yount*, 104 S.Ct. at 2885 *et seq.* This reliance is puzzling because in *Patton v. Yount*, the Supreme Court noted that the Court of Appeals had "independently examined the nature of the publicity surrounding the second trial." *Id.* 104 S.Ct. at 2887. In the matter before us, the district court and the majority have failed to make such an examination. In concluding that manifest error had not been committed by the trial court, the Supreme Court, in *Patton v. Yount*, independently examined the exhibits offered by the petitioner in support of his claim of a denial of a fair trial resulting from prejudicial publicity. After pointing out that four years elapsed between the first and second trial and therefore "prejudicial publicity was greatly diminished and community sentiment had softened," *id.* 104 S.Ct. at 2889, the Court stated:

> The record reveals that in the year and a half from the reversal of the first conviction to the start of the second *voir dire* each of the two Clearfield County daily newspapers published an average of less than one article a month. App. 642a–657a; Ex. Pl–V to Pl–kk, P–2. More importantly, many of these were extremely brief announcements of the trial dates and scheduling such as are common in rural newspapers. Eg., Ex. Pl–ff, Pl–ii, Pl–jj.

*Id.*

This independent scrutiny of the exhibits led the Supreme Court to conclude that the publicity was not "inflammatory" and did not create a "wave of public passion" as did the media accounts in *Irvin v. Dowd. Id.* 104 S.Ct. at 2889. It was only *after* this independent examination of the exhibits that the Court in *Patton v. Yount* proceeded to consider the impact of the publicity as revealed by the *voir dire* testimony of the prospective jurors. *Id.* 104 S.Ct. at 2889–91. Thus, the majority, while purporting to rely on *Patton v. Yount*, has ignored the process followed by the Supreme Court in applying the presumption of correctness due to a state court's factual findings pursuant to section 2254(d). In short, the majority has concluded that the district court's factual finding that the publicity was not prejudicial is presumed correct, notwithstanding the fact that the district court did not review the exhibits offered to demonstrate prejudice.

The majority, in its discussion of the existing law, makes the following statement:

> No decision of the United States Supreme Court and only *Harris v. Pulley* in this circuit specifically address the issue before us. *Townsend v. Sain*, 372 U.S. 293 [83 S.Ct. 745, 9 L.Ed.2d 770] (1963), *a leading case on the subject,*

holds that a district court has the power to compel production of the state court record and imposes an obligation to scrutinize it once it is received, but does not impose a duty to request the record *sua sponte. Id.* at 316 [83 S.Ct. at 758]. (Majority opinion, page 1352) (emphasis added).

The quoted language is troublesome in three respects. First, while we are told that *Townsend v. Sain* is "a leading case on the subject," we are given no clue as to the subject the majority has in mind. Nowhere in *Townsend v. Sain* does the Supreme Court mention the subject of the production of *court exhibits.*

Second, the actual holding in *Townsend v. Sain* is set forth on page 312, 83 S.Ct. at 756 in the following language:

> Where the facts are in dispute, the federal court, in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of trial or in a collateral proceeding.

In the matter before us, no issue has been raised concerning the *adequacy* of the hearing in the *state* court. Austad claims, instead, that the federal district court violated his right to due process because of *its* failure to review the state court *exhibits.*

Third, while it is quite true that the Supreme Court did not hold that a federal court must request the state court record *sua sponte,* in fairness, it should also be noted that this issue was no longer before the Supreme Court. In an earlier ruling vacating the judgment of the Seventh Circuit dismissing Townsend's appeal, the Court ordered the district court to determine "whether, *in the light of the state-court record,* a plenary hearing was required." *Townsend v. Sain,* 372 U.S. at 297, 83 S.Ct. at 749 (emphasis added). In the prior procedure, the federal district court had denied Townsend's writ of habeas corpus solely on the pleadings without examining the state court record. That is precisely what occurred in the matter before this court. The district court denied

Austad's claim without reviewing the state court exhibits. We are required to do precisely what the Supreme Court did in considering the claim presented in *Townsend.* We should vacate the judgment and remand for a decision as to whether, in light of the state court exhibits, Austad's federal constitutional rights were violated. Only after such review by the district court can we proceed to determine the validity of Austad's claim.

In determining whether there had been a full and fair evidentiary hearing on Townsend's federal constitutional claim, the Supreme Court reviewed and summarized evidence adduced at the state trial court hearing on the motion to suppress. *Id.* at 293–304, 83 S.Ct. at 745–753. The Court in *Townsend* described the duty of federal courts reviewing a state prisoner's claim of federal constitutional violation as follows:

> Where the fundamental liberties of the person are claimed to have been infringed, we carefully scrutinize the state court record. (Citations omitted). The duty of the district court is no less exacting.

*Id.* at 316, 83 S.Ct. at 759. No such exacting scrutiny was undertaken by this court or the district court in this matter.

While it is true, as stated by the majority, that the Supreme Court did "not impose a duty to request the record *sua sponte* " upon a federal district court, it is also accurate to state that the Court did not order Townsend to produce the state record upon remand. (Majority Opinion, page 1352).

The lesson of *Townsend v. Sain* is simple and direct: a federal district court cannot determine whether an evidentiary hearing is required on a petitioner's federal constitutional claim without reviewing the state court record. If a federal district court dismisses a federal constitutional claim without reviewing such record because it was not produced, the Supreme Court will remand with directions that the federal district court examine the state court record. The majority, in clear violation of *Townsend v. Sain,* has failed to

reverse and remand for a review of the state court exhibits.

In its discussion of *Jennings v. Ragen,* 358 U.S. 276, 79 S.Ct. 321, 3 L.Ed.2d 296 (1959), the majority, after noting that *Jennings* was a "four-paragraph decision," states that *"Jennings* sheds no direct light on the issue before us." (Majority Opinion, page 1352).

*Jennings* cannot be dismissed so cavalierly. It is certainly clear that in *Jennings,* the petitioner failed to produce the record of the state court proceedings. *Id.* at 277, 79 S.Ct. at 321. The federal district court dismissed on the pleadings, notwithstanding Jennings' allegations that the state introduced a confession "coerced by physical mistreatment by police officers." *Id.* at 276, 79 S.Ct. at 321. The Supreme Court vacated the judgment based on the following rationale:

> It appears from the record before us that the District Court dismissed petitioner's application without making any examination of the record of proceedings in the state courts, and instead simply relied on the facts and conclusions stated in the opinion of the Supreme Court of Illinois. We think that the District Court erred in dismissing this petition without first satisfying itself, by an appropriate examination of the state court record, that this was a proper case for the dismissal of petitioner's application with a hearing, in accordance with the principles set forth in *Brown v. Allen,* 344 U.S. 443, 463–465, 506 [73 S.Ct. 397, 410–412, 445, 97 L.Ed. 469 (1953)]. See also *Rogers v. Richmond,* 357 U.S. 220 [78 S.Ct. 1365, 2 L.Ed.2d 1361 (1958)]. It follows that the judgment of the Court of Appeals must be vacated and the case remanded to the District Court for further proceedings consistent with this opinion.

*Id.* at 277, 79 S.Ct. at 322.

The lesson of *Jennings v. Ragen* is also uncomplicated and straightforward: a federal district court cannot dismiss a claim of federal constitutional violation "without first satisfying itself" that no error occurred by examining the state court record.

*Id.* at 277, 79 S.Ct. at 322. In *Jennings,* the Supreme Court relied upon *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953) in determining that the district court erred in failing to make an appropriate examination of the state court record. In *Brown v. Allen,* the court affirmed the dismissal of a habeas corpus petition after noting: "[s]ince the complete record was before the District Court, there was no need for rehearing or taking of further evidence." *Id.* at 465, 73 S.Ct. at 411. Here, the complete record was not before the district court. Thus, there is a need to remand for an appropriate examination of the state court exhibits so that the district court may, in the first instance, satisfy itself that the publicity was not prejudicial. Until the Supreme Court disavows its holdings in *Townsend v. Sain* and *Jennings v. Ragen,* this court is compelled to vacate the judgment in this matter, and remand with directions to the district court to make an appropriate examination of the state court exhibits.

I would hold that the district court failed to fulfill its constitutional duty, as spelled out clearly in *Patton v. Yount,* in assessing Austad's claim of the denial of a fair trial due to publicity. The district court failed to examine the exhibits and then independently assess the prejudicial impact of the media coverage on the entire jury panel as well as those selected to serve. *See Irvin,* 366 U.S. at 725, 81 S.Ct. at 1644; *Sheppard,* 384 U.S. at 362, 86 S.Ct. at 1522. Moreover, in examining the *voir dire* transcripts, the district court improperly relied on the juror's assurances without independently assessing their impartiality in light of the totality of the circumstances. *See Murphy,* 421 U.S. at 800–02, 95 S.Ct. at 2036–37; *Irvin,* 366 U.S. at 723, 81 S.Ct. at 1642. The majority has repeated these errors. It has not examined the state court exhibits because they were not a part of the record before the district court, and it has relied on the juror's assurances in reaching the merits of Austad's claim that he was denied a fair trial. The process followed by the district court and the ma-

jority has deprived Austad of a fair determination of his claim that he was prejudiced by pretrial publicity, as required by *Irvin v. Dowd* and *Patton v. Yount.*

### III

### 28 U.S.C. § 2254

The majority attempts to justify the district court's failure to review the state court exhibits by placing the responsibility on the petitioner, without discussing the requirement suggested by the Supreme Court's review of similar claims in *Irvin* and *Patton,* that a reviewing court examine the nature of the alleged prejudicial publicity and thereafter evaluate the jurors' declarations of impartiality. It reaches this surprising result by construing 28 U.S.C. § 2254(e) as requiring that the petitioner produce state court exhibits.

Section 2254(e) does not contain any reference to the production of *exhibits* in support of a state prisoner's petition for a writ of habeas corpus. Instead, the statute provides that "the applicant, *if able,* shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(e) (emphasis added). Unfortunately, the majority fails to discuss the meaning of the words "if able" in the quoted passage from section 2254(e). These words have tremendous significance to the present case. While a non-indigent applicant can purchase a *reporter's transcript* of the trial proceedings, no state prisoner, rich or poor, or his advocate, is able to produce state court exhibits. Court exhibits are held in the custody of state officials. A court order is required for their production. In apparent recognition of this fact— i.e. that only the state can produce an exhibit—Congress included the following language in section 2254(e):

> If the applicant, because of indigency, *or other reason* is unable to produce such part of the record, then the State shall produce such part of the record, and the Federal Court shall direct the

state to do so by *order directed to an appropriate State official.*
28 U.S.C. § 2254(e).

Because the state court exhibits are not for sale, a "reason" other than indigency disables all applicants from producing relevant exhibits in every habeas matter under section 2254. As discussed above, the Supreme Court has made it clear that an examination of court exhibits is necessary where a claim is made that prejudicial publicity has resulted in the denial of a fair trial. Where a court exhibit is essential to the determination of a federal constitutional claim, the district court is required by section 2254(e) to issue an order directing the appropriate state court clerk to produce the exhibit because *no* applicant is able to do so, regardless of his economic means.

I would hold that section 2254(e) requires the district court to enter an order, on its own motion, directing the appropriate state court official to produce all exhibits offered to show that the pretrial publicity was prejudicial, where a claim is made that the applicant was denied a fair trial because of prejudicial publicity. The majority states that such a requirement would "saddle upon already overburdened district courts a record searching load of enormous dimension." (Majority Opinion, page 1353). The factual or logical basis for this observation is unclear. The majority apparently had no trouble in identifying the essential exhibits as "92 newspaper clippings and tapes or transcripts of radio and television newscasts which were submitted in the state court proceedings and which constitute the pretrial publicity of which Austad complains." (Majority Opinion, page 1351). As ably demonstrated by the majority, no record search of "enormous dimension" is required to issue an order that all exhibits containing newspaper reports and transcripts of radio and television newscasts be produced. The burden, if any, in identifying these exhibits, would fall on the state court clerk, and not the overburdened federal district court. The majority's holding that an applicant claiming prejudice because of news accounts of a crime must, in

every case, file a pro forma motion requesting that an order be issued to direct the appropriate state clerk to produce the exhibits, because he is unable to do so, will create a far greater burden on our federal district court clerks and judges. The majority's conclusion compels the filing of a useless motion that states the obvious, i.e. a state prisoner or his lawyer cannot produce an exhibit without a court order. The majority's holding has not only exalted form over substance, but justifies the failure to address a fundamental constitutional question because the petitioner did not perform an idle act.

Where prejudicial publicity is claimed, an interpretation of section 2254(e) that requires the district court to order the production of the state court exhibits of news accounts of the crime harmonizes the statute with constitutional guarantees of due process and fair trials. *See Irvin,* 366 U.S. at 728, 81 S.Ct. at 1645. If a construction of a statute is fairly possible which would avoid creating a serious doubt of constitutionality, a court should adopt that construction. *Califano v. Yamasaki,* 442 U.S. 682, 693, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979). The majority's construction of section 2254(e) renders it unconstitutional. I would interpret section 2254(e) as requiring the district court to order state court exhibits *sua sponte* to uphold its constitutionality.

This interpretation, moreover, is completely consistent with the presumption of correctness applicable to state court findings under 28 U.S.C. § 2254(d). The presumption of correctness is inapplicable if the factual determination is not fairly supported by the record. 28 U.S.C. § 2254(d)(8). A district court cannot determine whether a state court's finding is supported by the record without actually reviewing relevant exhibits. The majority states that those courts which have imposed a duty on the district court to make an independent review of the state court's record did not consider the "presumption of correctness." (Majority Opinion, page 1350). This court, however, has imposed such a duty when reviewing cases filed

under section 2254. *See, e.g., Bashor,* 730 F.2d at 1234 ("Our duty as a federal court sitting in habeas corpus is to make an independent review of the record...."); *Pierre v. Thompson,* 666 F.2d 424, 427 (9th Cir.1982) (in order to review the factual determination and apply the presumption, the district court must review the state court record or conduct an independent hearing); *Rhinehart v. Gunn,* 598 F.2d 557, 558 (9th Cir.1979) (per curiam) ("court cannot affirm a district court's judgment dismissing the [habeas] petition unless the record on appeal shows that the district court reviewed all relevant parts of the state court record"). *See also Turner v. Chavez,* 586 F.2d 111, 112 (9th Cir.1978) (court specifically considered Rules governing 28 U.S.C. § 2254, but stated that the district court must determine the sufficiency of state court findings from an independent review of the record, or otherwise grant a hearing and make its own findings on the merits).

The majority has given section 2254(e) an interpretation that imposes a technical and inflexible barrier to habeas corpus relief. This mechanical construction ignores the Supreme Court's direction concerning the interpretation of statutes governing habeas corpus relief. In *Price v. Johnston,* 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), the Supreme Court reminded us as follows:

> Moreover, the principle has developed that the writ of *habeas corpus* should be left sufficiently elastic so that a court may, in the exercise of its proper jurisdiction, deal effectively with any and all forms of illegal restraint. The rigidity which is appropriate to ordinary jurisdictional doctrines has not been applied to this writ.

*Id.* at 283, 68 S.Ct. at 1059. The majority's interpretation of section 2254 will make it impossible for this court to determine for itself whether a petitioner's federal constitutional rights have been violated where no request has been made for the production of exhibits introduced in the state court proceedings. The majority's rigid con-

struction of section 2254(e) finds no support in the decisions of our highest court. It precludes the type of review required by *Patton v. Yount* of a claim of the denial of a fair trial.

## IV

### DENIAL OF EQUAL PROTECTION TO THE POOR AND UNREPRESENTED

The rule created by the majority in this case—requiring a state prisoner to request an order from the district court directing the appropriate state court clerk to produce exhibits in support of his federal constitutional claim—will apply in the future solely to the poor and the unrepresented. Austad will escape this requirement (and avoid any claim of abuse of the writ) by filing a new petition for a writ of habeas corpus because his attorney "may have relied on [the law of the circuit] in failing to make production of the pretrial publicity exhibits." (Majority Opinion, page 1355.)

After the effective date of the majority's opinion, state prisoners represented by counsel who file for a writ of habeas corpus pursuant to section 2254, without requesting an order from the district court compelling the appropriate court official to produce the exhibits of news accounts about the crime, will be able to file a second writ of habeas corpus claiming ineffective assistance of counsel for failure to follow the majority's decision in this case. Thus, in this matter and in all future cases where the applicant for habeas corpus relief is represented by counsel who fails to request the district court to order production of pretrial publicity exhibits, an overburdened district court will be faced with two petitions for a writ of habeas corpus as a result of the majority's interpretation of section 2254(e). An indigent state prisoner unrepresented by counsel who fails to request the court to order production of such news accounts of the crime will not receive the benefit of an independent examination of the exhibits containing publicity he claims was prejudicial, and will presumably be precluded from presenting his federal constitutional claim in a second writ on abuse of process grounds.

Thus, the result reached by the majority does not avoid work for district courts for those petitioners fortunate enough to have a lawyer, even if incompetent, and denies equal protection to unrepresented indigents. Congress cannot have intended such an unfair and unconstitutional consequence in amending section 2254.

### CONCLUSION

I would reverse and remand this matter to the district court with directions to order the appropriate state court clerk to produce the exhibits containing newspaper accounts and transcripts of radio and television newscasts.