Vernon REIGER, Sr.,
Petitioner-Appellant,

v.

Robert CHRISTENSEN and Tany S.
Hong, Respondents-Appellees.

No. 84–1528.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 14, 1985.

Decided May 21, 1986.

Vernon Reiger, Sr., in pro per.

Arthur E. Ross, Deputy Prosecuting Atty. City and County of Honolulu, Honolulu, Hawaii, for respondents-appellees.

Before SKOPIL, FLETCHER, and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

Vernon Reiger, Sr. appeals in pro se from the district court's denial of his habeas corpus petition alleging ineffective assistance of counsel and various due process claims.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On February 25, 1979, an intruder attacked Josephine Hoapili in her apartment. After sexually assaulting her, the attacker shot Hoapili three times in the back of her head with a .22 caliber pistol.

The State of Hawaii charged Reiger with rape, attempted murder, and first degree burglary. The State's case against Reiger rested on Hoapili's identification of Reiger

as her assailant and on circumstantial evidence linking Reiger to Hoapili's apartment. In particular, Reiger's estranged girlfriend, Shannon Scott, testified that she had previously lived in Hoapili's apartment and that Reiger still had a pass key. Reiger was convicted as charged after a jury trial in Hawaii state court. The Hawaii Supreme Court affirmed. *State v. Reiger*, 64 Hawaii 510, 644 P.2d 959 (1982).

On August 4, 1982, Reiger filed a habeas corpus petition. The district court denied his petition on the merits without holding an evidentiary hearing. Reiger seeks reversal on the following grounds:

One. The district court erred in denying Reiger's claim of ineffective assistance of counsel without conducting an evidentiary hearing.

Two. The district court erred in finding that the state trial court's admission of a photo array from which the victim had identified Reiger did not deprive Reiger of his due process rights.

Three. The district court erred in finding that the state trial court's admission of a prosecution witness's statement that Reiger had a "long police record" did not violate Reiger's due process rights.

Four. The district court erred in holding that the state trial court's refusal to grant a mistrial based on the State's delay in disclosing negative fingerprint test results did not deprive Reiger of due process.

Five. The district court erred in ruling that the state trial court's refusal to admit evidence of a prosecution witness's prior shoplifting conviction for impeachment purposes did not violate Reiger's due process rights.

Six. The district court erred in finding that the state trial court's refusal to segregate the jurors for questioning regarding their exposure to potentially prejudicial pretrial publicity did not violate Reiger's right to a fair and impartial trial.

We discuss the facts pertinent to each claim under separate headings.

## II. STANDARD OF REVIEW

■■■ We review *de novo* a district court's decision on a petition for a writ of habeas corpus. *Weygandt v. Ducharme*, 774 F.2d 1491, 1492 (9th Cir.1985); *Chatman v. Marquez*, 754 F.2d 1531, 1533–34 (9th Cir.1985). This court also reviews *de novo* the district court's determination that trial counsel rendered ineffective assistance. *Weygandt v. Ducharme*, 774 F.2d at 1492–93; *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir.1985).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Reiger claims that he was deprived of his Sixth Amendment right to counsel by his state trial counsel's deficient performance. He contends that his trial counsel erred by (1) failing to introduce evidence that a murder with a similar modus operandi had been committed in Hoapili's apartment building one year prior to the attack on Hoapili, (2) failing to object to questioning concerning Reiger's connection with local organized crime figures, and (3) eliciting damaging testimony from two prosecution witnesses on cross-examination.

■■■ Reiger's failure to raise these claims before the Hawaii Supreme Court precludes him from raising them in federal court. A habeas petitioner must exhaust state remedies unless he shows an absence of available state corrective process or circumstances rendering such process ineffective. 28 U.S.C. § 2254(b); *see Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 1201, 71 L.Ed.2d 379 (1982); *Lindquist v. Gardner*, 770 F.2d 876, 877 (9th Cir.1985); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir.1983). If the habeas petitioner's claim was not presented to the state court on direct appeal, state collateral remedies must be exhausted. *Sweet v. Cupp*, 640 F.2d 233, 235 (9th Cir.1981). Although Reiger's failure to raise these issues on direct appeal to the Hawaii Supreme Court bars state collateral relief, *see* Hawaii R.Penal P. 40(a)(3);[1] *Matias v. Oshiro*, 683

---

1. Hawaii Rule of Penal Procedure 40(a)(3) provides, in relevant part:

(3) Inapplicability. Said [post-conviction] proceedings shall not be available and relief

F.2d 318, 320–21 (9th Cir.1982), a failure to comply with state procedural rules does not exempt a habeas petitioner from the exhaustion requirement unless he demonstrates cause and prejudice for his failure to exhaust state collateral remedies. *Wainwright v. Sykes,* 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–08, 53 L.Ed.2d 594 (1977); *Matias,* 683 F.2d at 321. Because Reiger has made no showing of cause for his failure to comply with Hawaii procedural rules, federal relief is not available to him. *See id.* Reiger was represented by different counsel on his appeal to the Hawaii Supreme Court (they also represented him on his petition to the district court); he does not indicate dissatisfaction with their performance.

Reiger also argues that his trial counsel erred by (1) failing to introduce at trial, test results that indicated that Reiger's fingerprints were not found in Hoapili's apartment; (2) failing to *voir dire* jurors who had been exposed to potentially prejudicial pretrial publicity concerning the case; (3) failing to object during the opening and closing arguments to prosecutorial comment that the crimes were committed in the manner of a "gangland execution"; and (4) failing to object to prosecution witness Shannon Scott's testimony that Reiger had "a long police record." Reiger asserts that the district court should have held an evidentiary hearing to resolve these claims.

█ We may not affirm a district court's summary denial of a writ of habeas corpus unless the record on appeal indicates that the district court independently reviewed all relevant portions of the state court record. *Richmond v. Ricketts,* 774 F.2d 957, 961 (9th Cir.1985); *Johnson v. Lumpkin,* 769 F.2d 630, 636 (9th Cir.1985). The district court did not review the transcript of the trial in this matter. Because resolution of Reiger's claims of ineffective assistance is dependent upon a review of

the trial transcript, we remand for such independent consideration those of Reiger's ineffective assistance of counsel claims that were raised before the Hawaii Supreme Court. *See Richmond,* 774 F.2d at 961; *Johnson,* 769 F.2d at 636.

Our decision in *Austad v. Risley,* 761 F.2d 1348 (9th Cir.) (en banc), *cert. denied,* — U.S. ——, 106 S.Ct. 163, 88 L.Ed.2d 135 (1985) is not to the contrary. In *Austad* we held that a habeas petitioner who alleges that the jury's exposure to prejudicial pretrial publicity prevented him from receiving a fair trial has the burden to produce pertinent portions of the state court record. *Id.* at 1353. We opined that the district court has no duty *sua sponte* to obtain and examine the state court exhibits unless the petitioner is unable to produce the record. *Id.* We reasoned that the determination of a juror's partiality or bias is a factual determination to which 28 U.S.C. § 2254(d)'s presumption of correctness applies, *id.* at 1350, and concluded that it is petitioner's duty under section 2254(d) to establish by convincing evidence that the challenged factual determinations of the state court were erroneous. *Id.* at 1353.

█ In contrast, Reiger's habeas corpus petition, like that in *Johnson,* alleges an ineffective assistance of counsel claim, a mixed question of fact and law. *See Butcher v. Marquez,* 758 F.2d at 376. We have held that the section 2254(d) presumption of correctness applies only to issues of fact as found by the state courts, and does not apply to federal court review of state court decisions regarding mixed questions of law and fact. *See Fendler v. Goldsmith,* 728 F.2d 1181, 1190–91 n. 21 (9th Cir.1983). We give deference to the state court's findings of the underlying facts, but reserve the right to give different legal weight to such facts. *Butcher v. Marquez,* 758 F.2d at 376. Our holding in *Austad,*

thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. An issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any

other proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

premised as it was upon a petitioner's duty to produce evidence in support of a challenge to a state court's factual findings, has no application to the instant case.

In *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the Supreme Court set out six separate circumstances in which a federal court reviewing factual issues previously decided by state courts must grant an evidentiary hearing to a habeas applicant. *See id.* at 313, 83 S.Ct. at 757. In the instant case, the district court's failure to review the relevant portions of the state court record prevented it from ascertaining whether an evidentiary hearing was appropriate. *See id.* at 319, 83 S.Ct. at 760; *Richmond v. Rickets*, 774 F.2d at 961–62. Where, as here, the state court opinion contained no specific factual findings,[2] there may be a heightened need for an evidentiary hearing. *See Townsend*, 372 U.S. at 320, 83 S.Ct. at 760 (evidentiary hearing required where state trial judge "rendered neither an opinion, conclusions of law, nor findings of fact."). Accordingly, we reverse and remand Reiger's ineffective assistance counsel claims to the district court with instructions to review the relevant portions of the state court record and to determine whether an evidentiary hearing is required.

## IV. ADMISSION OF PHOTOGRAPHIC ARRAY

Reiger next contends that the introduction into evidence of the photographic array, from which Hoapili identified him, violated his due process rights. On at least two occasions, the police showed Hoapili an array of photographs which included Reiger's picture.[3] Each time, Hoapili selected Reiger's picture, along with a few other pictures, as resembling her assailant.[4] Hoapili made a third positive identification at a live lineup conducted at the police station.

The prosecution sought to bolster Hoapili's in-court identification of Reiger as her attacker by introducing into evidence the photographic array shown to Hoapili in the hospital immediately after the attack. The pictures were introduced through the testimony of the investigating police officer, Detective Benson. Reiger argues that the introduction of the photographs, which presented front and profile images typical of police "mugshots," prejudiced him by suggesting prior contact with the police.

The Hawaii Supreme Court rejected Reiger's argument, reasoning that Reiger's alibi defense rendered the question of identification crucial to the prosecution's case and holding that introduction of the photographs was relevant and necessary to the State's case. *State v. Reiger*, 64 Hawaii at 512, 644 P.2d at 962. The court applied the three-part test for the admissibility of such evidence established in *State v. Kutzen*, 1 Hawaii App. 406, 620 P.2d 258 (1980), and concluded that (1) the government demonstrated a need to introduce the photographs, (2) the photographs themselves gave no indication that Reiger had a prior

2. The state court's opinion contains only the following conclusory paragraph addressing Reiger's claim:

   Lastly, appellant argues that he was deprived of the right to effective assistance of counsel at the trial below. Upon a reading of the record, we find no basis for this contention. Appellant's trial counsel's conduct was 'within the range of competence demanded of attorneys in criminal cases.'
   *State v. Reiger*, 64 Hawaii at 515–16, 644 P.2d at 964 (citation omitted).

3. Both parties agree that there were at least two photographic arrays. Reiger, however, maintains that Hoapili viewed police photographs on a third occasion, at which time Hoapili did not select his picture.

4. The parties' accounts of the photographic sessions differ sharply. The state asserts that at the first session, which took place shortly after the attack while Hoapili was recovering in the hospital, Hoapili selected Reiger's picture and no other. Although the state concedes that Hoapili selected a second photograph at the second session, it maintains that she did so only after choosing Reiger's photograph and only to underscore her belief that her attacker was stockier than Reiger. Reiger, by contrast, asserts that Hoapili selected several photos at the first session, and that she selected Reiger's photograph at the second session after choosing the stockier assailant and after being asked why she failed to choose Reiger's photograph instantly. We need not concern ourselves with this discrepancy because it is immaterial to our resolution of this issue.

criminal record, and (3) the manner of their introduction at trial did not draw particular attention to the source or implications of the photographs. *State v. Reiger*, 64 Hawaii at 512–13, 644 P.2d at 962. The district court reached the same conclusion.

The dispositive issue is not whether introduction of the photographs violated state law evidentiary principles, but whether the trial court committed an error which rendered the trial "so 'arbitrary and fundamentally unfair' that it violated federal due process." *Pennywell v. Rushen*, 705 F.2d 355, 357 (9th Cir.1983) (*quoting Powell v. Spalding*, 679 F.2d 163, 166 (9th Cir.1982)). We are not persuaded that the trial court committed such an error.

The Eighth Circuit considered a similar situation in *Futrell v. Wyrick*, 716 F.2d 1207 (8th Cir.1983). There, an unsuccessful habeas petitioner claimed that the introduction of police mugshots at his trial violated his due process rights. The court of appeals disagreed. "The manner in which the photographs were introduced," the court found, "was unexceptionable. The photographs were never referred to as 'mugshots' and all police data was removed from them." *Id.* at 1208. Thus, their introduction did not violate notions of fundamental fairness. *Id.; see also United States v. Terry*, 760 F.2d 939, 944 (9th Cir.1985) (holding that introduction of mugshots containing no incriminating police data was not an abuse of the district court judge's discretion).

The photographs in Reiger's case did not betray any link with the police or suggest that Reiger had a past criminal record. *See State v. Reiger*, 64 Hawaii at 512, 644 P.2d at 962. Reiger does not allege that the pictures bore any markings identifying their source as the police department files or that the prosecution's efforts to disguise any identifying numbers or lettering drew attention to the pictures' prejudicial significance. Instead, he asserts only that the juxtaposition of front and profile images

gave rise to an inference of a prior criminal record. *See Barnes v. United States*, 365 F.2d 509, 510–11 (D.C.Cir.1966) (finding that the double shot picture leads to an automatic response that the person photographed has a criminal record).[5] While it may have been preferable to separate the images, the mere failure to do so does not render a criminal trial fundamentally unfair. *Futrell*, 716 F.2d at 1208.

The fact that the prosecution chose to introduce the photographic array through the testimony of a police officer rather than through the testimony of Hoapili herself does not alter our conclusion. In *United States ex rel. Bleimehl v. Cannon*, 525 F.2d 414 (7th Cir.1975), another case in which the identity of the assailant was the central issue, the court sustained against a habeas challenge the introduction of an entire book of mugshots, including a photograph of the defendant taken some years earlier. Because the witnesses' ability to identify the assailant was central to the case, the court found that the probative value of allowing the jury to examine the mugshots was critical, while any prejudice that resulted was merely secondary to the manner in which the testimony established the defendant's identity as the culprit. *Id.* at 421–22. And in *United States ex rel. Johnson v. Hatrack*, 417 F.Supp. 316 (D.N. J.1976), *aff'd* 564 F.2d 90 (3d Cir.1977), *cert. denied*, 435 U.S. 906, 98 S.Ct. 1454, 55 L.Ed.2d 497 (1978), a police officer, while describing a photographic array to the jury, inadvertently revealed that the photographs were mugshots taken from police files. The court concluded that the inference of the defendant's prior criminality raised by the officer's remarks was "too slender a reed upon which to predicate a claim that the trial was fundamentally unfair." *Id.* at 324.

Similarly, the manner in which the state introduced the photographic array in Reiger's case did not amount to fundamental unfairness. As in *Bleimehl*, the victim's

---

5. Despite its strong criticism of the introduction of the "doubleshot images," the *Barnes* case ultimately turned on the prosecution's flimsy efforts to hide the pictures' identifying markings by placing adhesive tape over the prison numbers, an effort which emphasized rather than disguised the prejudicial impact of introducing the photographs. *See* 365 F.2d at 511.

ability to identify her assailant was a central issue. And as in *Hatrack*, any prejudice resulting from the manner of introduction did not outweigh the probative value of introducing the photographs.

We need not address Reiger's argument, raised for the first time in his brief on appeal to this court, that the manner in which the police presented the photographs to Hoapili was impermissibly suggestive. Reiger failed to present this contention to the state courts. He thus forfeited his right to collateral relief in federal court. As discussed above, Reiger's failure to give the Hawaii Supreme Court an opportunity to rule on the issue and his inability to establish cause or prejudice for his failure preclude consideration of his claim here.

The district court properly dismissed Reiger's claim that the admission of the photographic array from which Hoapili first identified him violated Reiger's due process rights.

## V. ADMISSION OF SCOTT'S TESTIMONY THAT REIGER HAD A "LONG POLICE RECORD"

Reiger next argues that the prosecution injected his criminal past into the trial in a different way, this time through the testimony of one of the prosecution witnesses. The offending statement came up while Reiger's estranged girlfriend, Shannon Scott, was on the witness stand. Scott apparently testified that she had adopted the name "Scott" at the time she and Reiger lived together, a time when Reiger also used the name Scott. When asked why she adopted the name, Scott replied, "Mr. Reiger told me that was his good name. Reiger was a name that he had a lot of, a long police record with." *State v. Reiger*, 64 Hawaii at 513, 644 P.2d at 962.

Reiger failed to object to this statement at trial. He did raise the issue in a motion for a mistrial, however, which the trial court denied. *Id.* He did not move to strike the evidence or request a cautionary instruction. *Id.* The Hawaii Supreme Court affirmed, restricting its inquiry to evidentiary principles and finding that "in the circumstances of this case" the answer's

probative value outweighed any prejudicial effect. *Id.;* 644 P.2d at 963. The court also noted that Reiger's attack was upon the admission of the evidence rather than upon denial of the motion for mistrial, and that no objection was made to the admission of the evidence. *Id.* The district court agreed without further analysis. We construe Reiger's argument concerning the admission of Scott's testimony as a contention that the denial of his motion for a mistrial deprived him of due process.

■ Reiger's failure to assert a contemporaneous objection to the admission of Scott's testimony does not preclude collateral review. The purpose of the contemporaneous objection rule was substantially served by Reiger's motion for a mistrial. *See Henry v. Mississippi*, 379 U.S. 443, 448–49, 85 S.Ct. 564, 567–68, 13 L.Ed.2d 408 (1965) (purpose of state contemporaneous objection rule was substantially served by petitioner's motion for directed verdict based upon erroneous admission of certain testimony; at that point trial court could have stricken the tainted testimony, given a cautionary instruction, or taken other appropriate action). Thus, to the extent that the Hawaii Supreme Court rested its ruling upon Reiger's failure to object to admission of Scott's testimony, we disagree with its conclusion.

■ We cannot determine without reference to the state court trial transcript whether the admission of Scott's statement transgresses the due process "boundary beyond which state [evidentiary] rules cannot stray...." *Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). The district court's failure to conduct an independent review of the transcript prevented it from ascertaining whether the trial court performed the requisite balancing test and weighed the prejudicial effect of Scott's testimony against its probative value. We decline to speculate as to the grounds upon which the trial court denied the motion for mistrial. Because we must remand this case for other reasons (discussed *supra*, Section III and

*infra,* Section VIII), the district court will have ample opportunity to review the transcript. Therefore, we remand to the district court the question whether Scott's testimony violated Reiger's due process rights.

## VI. STATE'S DELAY IN DISCLOSING NEGATIVE FINGERPRINT EVIDENCE

Reiger argues that the state's delay in disclosing fingerprint test results violated his right to disclosure of exculpatory materials secured by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The results revealed that Reiger's fingerprints were not found in Hoapili's apartment. The Hawaii Supreme Court rejected Reiger's argument. It found that the state had in fact disclosed the existence of negative test results at a pretrial conference. *State v. Reiger,* 64 Hawaii at 515, 644 P.2d at 963.[6] The court also found that Reiger's attorney failed to request discovery of the report under Hawaii Rules or to pursue the matter at all after the conference. 64 Hawaii at 515, 644 P.2d 963–64. The district court adopted the Hawaii Supreme Court's reasoning and further found that the test results were not "material" as required by *Brady.*

*Brady* proscribes prosecutorial suppression of exculpatory evidence that is "material" either to guilt or punishment. 373 U.S. at 87, 83 S.Ct. at 1196. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* —— U.S. ——, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985). In the instant case, Reiger does not allege complete nondisclosure by the prosecution, but merely *untimely* disclosure. *Brady* "involves the discovery, *after trial,* of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs,* 427 U.S. 97, 103, 96

S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) (emphasis added).

We have found no *Brady* violation stemming from the government's delay in disclosure in situations where defense counsel was made aware of the exculpatory evidence well before trial. *See, e.g., United States v. Multi-Management, Inc.,* 743 F.2d 1359, 1363 (9th Cir.1984); *United States v. Bell,* 742 F.2d 509, 510–11 (9th Cir.1984). The prosecution's failure in Reiger's case to disclose the fingerprint tests until the pretrial conference does not dictate a different result. *See United States v. Kubiak,* 704 F.2d 1545, 1549–51 (11th Cir.), *cert. denied,* 464 U.S. 852, 104 S.Ct. 163, 78 L.Ed.2d 149 (1983); *cf. Hilliard v. Spalding,* 719 F.2d 1443, 1447 (9th Cir.1983) (where exculpatory evidence of sperm sample taken from rape victim in rape case was *never* furnished to defense, defendant was deprived of due process rights). As the Hawaii Supreme Court found, state law provided Reiger's counsel with a variety of avenues to pursue discovery of the fingerprint report. In particular, counsel could have asked the trial court for a continuance for the purpose of obtaining and analyzing the test results. *See State v. Reiger,* 64 Hawaii at 515, 644 P.2d at 964; *see also Bell,* 742 F.2d at 511. Even after finding out about the tests, however, Reiger's attorney failed to seek a continuance or to make any effort to pursue the test further.

The district court correctly dismissed Reiger's claim that the prosecution's delay in disclosing to the defense negative fingerprint results violated his due process rights.

## VII. ADMISSIBILITY OF SCOTT'S PRIOR SHOPLIFTING CONVICTION

At trial, Reiger sought to impeach Shannon Scott by proof of a prior shoplifting conviction. The trial court sustained the

---

**6.** Reiger nonetheless contends that the disclosure did not occur until "midtrial." Because he has produced no evidence sufficient to rebut the presumption of correctness afforded to state

court factual determinations under section 2254(d), we accept the Hawaii Supreme Court's finding that disclosure occurred at the pretrial conference.

prosecutor's objection and rejected Reiger's offer of proof. The Hawaii Supreme Court affirmed, finding that the theft was not a felony or a misdemeanor involving "moral turpitude" within the meaning of applicable state evidentiary rules. 64 Hawaii at 515, 644 P.2d at 964. The district court adopted the state supreme court's reasoning. Reiger apparently claims a denial of the right to confront adverse witnesses secured by the sixth amendment.

▪▪▪ The sixth amendment guarantees criminal defendants the right to cross-examine adverse witnesses to uncover possible bias and to expose the witness's motivation in testifying. *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974); *United States v. McClintock,* 748 F.2d 1278, 1289 (9th Cir. 1984), *cert. denied,* — U.S. ——, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985); *Chipman v. Mercer,* 628 F.2d 528, 530 (9th Cir.1980). This right, however, is not absolute. The matters that the defendant intends to pursue on cross-examination must be at least relevant: "[S]ome topics may be of such minimal relevance that the trial court would be justified either in totally prohibiting cross-examination about them or in allowing only limited questioning." *Skinner v. Cardwell,* 564 F.2d 1381, 1389 (9th Cir.1977), *cert. denied,* 435 U.S. 1009, 98 S.Ct. 1883, 56 L.Ed.2d 392 (1978). Moreover, the defendant's right to attack the witness's general credibility enjoys less protection than his right to develop the witness's bias. *Hughes v. Raines,* 641 F.2d 790, 793 (9th Cir.1981); *see Davis,* 415 U.S. at 321, 94 S.Ct. at 1112 (Stewart, J., concurring) ("[T]he Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions.").

▪▪ Scott's prior conviction for shoplifting does not suggest any bias against Reiger. Its introduction would not prove that she bore any personal ill will against him, *see, e.g., Chipman,* 628 F.2d at 532, or that she had any special reason to cooperate with the government, *see, e.g, Davis,* 415 U.S. at 317–18, 94 S.Ct. at 1110–11. More-

over, the conviction was only marginally relevant to Scott's overall credibility. *See United States v. Ortega,* 561 F.2d 803, 806 (9th Cir.1977) (shoplifting does not involve "dishonesty or false statement" within the meaning of Rule 609(a)). The trial court's refusal to allow its introduction did not violate Reiger's confrontation rights. *See Hughes,* 641 F.2d at 792–93 (trial court's ruling precluding a rape defendant from questioning the victim about an attempted rape accusation she had made previously against another person did not violate the defendant's right to confrontation).

The district court properly dismissed Reiger's claim that his sixth amendment confrontation rights were infringed by the trial court's refusal to admit Scott's prior shoplifting conviction for impeachment purposes.

## VIII. FAILURE TO SEGREGATE JURORS FOR QUESTIONING REGARDING EFFECT OF PRETRIAL PUBLICITY

After the jury had been impaneled, the trial court was informed that the jury had been exposed to adverse pretrial publicity regarding Reiger. Over defense counsel's objection, the trial court examined each juror individually in open court in the presence of the other jurors. *State v. Reiger,* 64 Hawaii at 513, 644 P.2d at 963. The trial court's questioning of the first juror, Mrs. Kamodo, elicited from her the following summary of what she had heard:

> The first part was about James Benton's bail and then Mr. Reiger's bail and the amount and the discrepancy and it was the name and also Mr. Reiger's possible connection with the underworld.

*Id.* The court excused Mrs. Kamodo after determining that she could not function as a fair juror. *Id.* Of the remaining jurors, only two responded that they had inadvertently read such an article in the newspaper; both, however, stated that they could give Reiger a fair trial. 64 Hawaii at 514, 644 P.2d at 963. Reiger's counsel was given the opportunity to ask additional questions of these jurors but did not do so. *Id.* The

Hawaii Supreme Court found that "[a]lthough it would have been better practice to have examined the individual jurors ... out of the presence of the other jurors," Reiger was not prejudiced by the procedure employed. *Id.* The district court agreed.

Reiger argues that the trial court's failure to segregate the affected jurors for questioning necessarily deprived him of his right to a fair and impartial trial. We disagree. When prejudicial matter is brought to the jury's attention during the course of a trial, the court should "[make] a careful, individual examination of each of the jurors involved, out of the presence of the remaining jurors, as to the possible effect of the articles." *Silverthorne v. United States,* 400 F.2d 627, 639 (9th Cir. 1968) (*quoting Coppedge v. United States,* 272 F.2d 504, 508 (D.C.Cir.1959), *cert. denied,* 368 U.S. 855, 82 S.Ct. 92, 7 L.Ed.2d 52 (1961)); *accord, United States v. Giese,* 597 F.2d 1170, 1183 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979). The question in the instant case, however, is whether individual voir dire outside the presence of the other jurors is *constitutionally* required.

■ The Constitution does not require an individual voir dire of all jurors exposed to potentially prejudicial publicity. *See Ristaino v. Ross,* 424 U.S. 589, 594, 96 S.Ct. 1017, 1020, 47 L.Ed.2d 258 (1976) ("The Constitution does not always entitle a defendant to have questions posed during voir dire specifically directed to matters that conceivably might prejudice veniremen against him."). Our direction to trial courts that jurors who have been exposed to potentially prejudicial publicity during the course of trial should be subjected to a careful, individual examination out of the presence of the remaining jurors, *see Silverthorne,* 400 F.2d at 639, is necessarily based upon our supervisory power to " 'formulate and apply proper standards for the enforcement of the criminal law in the federal courts,' and [was not] a matter of constitutional compulsion." *See Murphy v. Florida,* 421 U.S. 794, 797, 95 S.Ct. 2031, 2034, 44 L.Ed.2d 589 (1975) (*quoting Marshall v. United States,* 360 U.S. 310,

313, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250 (1959)); *Jackson v. Amaral,* 729 F.2d 41, 45 (1st Cir.1984). We may reverse Reiger's conviction only if there is reason to believe that the procedure employed by the trial court involves "such a probability that prejudice will result that it is deemed inherently lacking in due process." *Estes v. Texas,* 381 U.S. 532, 542–43, 85 S.Ct. 1628, 1632–33, 14 L.Ed.2d 543 (1965).

■ We are unable to ascertain from the record before us whether the trial court's failure to segregate the jurors for questioning violated Reiger's right to a fair and impartial trial. Individual voir dire is not constitutionally required in cases involving unsupported general allegations of prejudicial pretrial publicity or in cases where the publicity does not create a significant potential of prejudice. *United States v. Colacurcio,* 659 F.2d 684, 689 (5th Cir.1981), *cert. denied,* 455 U.S. 1002, 102 S.Ct. 1635, 71 L.Ed.2d 869 (1982). Mrs. Kamodo's comments clearly transcend unsupported general allegations of prejudicial pretrial publicity, *see id.,* and the fact that her observations were elicited in open court may have created a significant potential for prejudice. *Compare Jackson v. Amaral,* 729 F.2d at 45 (fact that judge's nonsegregated voir dire led one juror to publicly question her impartiality "indicates that the voir dire was not wholly ineffective and suggests that any other juror who doubted his or her ability to render an impartial verdict would have felt comfortable in stepping forward"); *and Colacurcio,* 659 F.2d at 689 (district court did not abuse its discretion by failing to conduct individual segregated voir dire of jurors who had been exposed to newspaper articles suggesting that defendant possessed strong underworld connections and was able to post bail in less than one-half hour) *with Coppedge v. United States,* 272 F.2d at 508 (jurors' exposure to adverse pretrial publicity deprived defendant of right to fair trial where jurors were questioned about such exposure in open court; had one juror described the contents of the publicity and stated that he would be influenced in his verdict,

damage to defendant would have been spread to listening jurors).

▉ Given Mrs. Kamodo's responses to the court's voir dire, the district court had the duty to make an independent examination of the state court transcripts to determine whether the jurors' assurances of impartiality were adequate to insure Reiger a fair trial. *See Patton v. Yount,* 467 U.S. 1025, 1031–34, 104 S.Ct. 2885, 2888–90, 81 L.Ed.2d 847 (1984); *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961); *Bashor v. Risley,* 730 F.2d 1228, 1234 (9th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). Because the district court did not obtain the state court transcripts, it was unable to perform such an independent evaluation. Therefore, we remand to the district court for consideration of Reiger's claim that his right to a fair trial was violated by the district court's failure to conduct an individual voir dire of each juror out of the presence of the others.[7]

## IX. CONCLUSION

Because resolution of Reiger's ineffective assistance of counsel claim is dependent upon a review of the state court trial transcript and it is apparent from the record that the district court did not review the transcript, we remand for independent consideration those claims of ineffective assistance which Reiger raised before the Hawaii Supreme Court. The district court is also instructed to consider whether an evidentiary hearing on Reiger's ineffective assistance claim is required under *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 770 (1963).

Additionally, on remand the district court should review the state court trial transcript and make an independent determination whether (1) admission of Shannon Scott's testimony regarding Reiger's use of the name Scott violated Reiger's due process rights, and (2) the voir dire procedure employed by the trial court impaired Reiger's right to a fair trial. The district court's dismissal of Reiger's petition on the remaining due process grounds is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

7. Our resolution of the instant case is consistent with our en banc decision in *Austad v. Risley.* Although in cases involving factual determinations such as juror impartiality, *Austad* places a burden on the habeas petitioner to produce the pertinent parts of the record, that "burden of producing the record does not lie heavily upon petitioner's shoulders." *Austad,* 761 F.2d at 1354 n. 3.

Under the Rules applicable to 28 U.S.C. § 2254, the state is obligated to respond to the allegations of the petition. Rule 5 requires the state to indicate what transcripts are available, when they can be furnished, and also what proceedings have been recorded but not transcribed. "There shall be attached to the answer such portions of the transcripts as the answering party deems relevant." Rule 5.

Thus, normally, the parties will have identified and made available the relevant portions of the record for review by the federal trial judge. If the parties fail to do so,

the trial judge has ample discretion to require, once informed, that a sufficient portion of the record be produced so that the court can make an intelligent decision ... There is no reason to assume that in reviewing the record trial judges will not have the competence to know or the will to act if the petition or the circumstances show that a part of the record which is missing is obviously needed to determine whether the petitioner's constitutional rights were violated.
*Austad,* 761 F.2d at 1355 n. 4.

Here, there can be no dispute that the voir dire transcripts are crucial to Reiger's claim. Although the parties did not provide those transcripts for review, it is clear that the trial judge should have known that he could not evaluate the alleged constitutional violation without them. By contrast, the trial judge in *Austad* had voir dire transcripts available that allowed him to make an "intelligent decision," based on the record.