999 F.2d 546
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Brad WILKINSON, Petitioner-Appellant,
v.
Bob GOLDSMITH, et al, Respondent-Appellee.
 No. 92-15435.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 10, 1993.*
Decided July 23, 1993.
 
 1
 Before BROWNING and CANBY, Circuit Judges, and KELLEHER** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Brad Wilkinson, an Arizona state prisoner, appeals pro se the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition. We review de novo, Norris v. Risley, 878 F.2d 1178, 1180 (9th Cir.1989), and we affirm.
 
 I. Ineffective Assistance of Counsel
 
 4
 Wilkinson contends that he received ineffective assistance of counsel both at trial and on direct appeal. We disagree.
 
 
 5
 To demonstrate ineffective assistance, a defendant must show that (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). A reasonable tactical decision by counsel with which the defendant disagrees cannot form the basis of an ineffective assistance claim. Id. at 689; Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir.1984).
 
 
 6
 In his habeas petition, Wilkinson made twenty-seven allegations of ineffective assistance of counsel relating to his attorney's preparation for trial, conduct at trial and sentencing, and selection of issues to raise on direct appeal. In a report and recommendation filed on November 5, 1991, a magistrate judge thoroughly analyzed each of Wilkinson's allegations and concluded that they lacked merit. The district court adopted the magistrate judge's report and recommendation in an order filed on February 24, 1992. In his briefs on appeal, Wilkinson has not presented any basis upon which the district court's determination that he received effective assistance of counsel could be overturned.
 
 II. Use of Perjured Testimony at Trial
 
 7
 Wilkinson contends that two police officers, who testified as witnesses for the state, committed perjury. In particular, he alleges that Turner, a University of Arizona Police Officer, falsely testified that: (1) Wilkinson's pants were unzipped when he stepped out of his truck; and (2) Wilkinson was pulled over because he failed to heed a stop sign. Wilkinson also challenges Tucson Police Officer Harris's testimony that the footprint outside Aboud's bedroom window matched Wilkinson's shoe.
 
 
 8
 Although the constitution prohibits the state from knowingly presenting false testimony, the state need not prove its case by unimpeachable testimony, and contradictory testimony does not constitute perjury. United States v. Wolf, 813 F.2d 970, 976 n. 18 (9th Cir.1987); Carothers v. Rhay, 594 F.2d 225, 229 (9th Cir.1979). Wilkinson has not shown that any of the challenged testimony by Turner or Harris was false; nor has he shown that the prosecutor knew that any of their testimony was false. At most, his allegations against the state witnesses amount to challenges to their credibility, which was fully explored at trial and determined by the jury. Accordingly, Wilkinson was not deprived of due process. See id.
 
 
 9
 III. Unavailability of Part of Trial Transcript
 
 
 10
 Wilkinson argues that the lack of a transcript for the final day of his trial deprived him of due process. We reject this argument.
 
 
 11
 The transcript was unavailable because the court reporter died before transcribing the last day of Wilkinson's trial, and the court reporter's notes could not be located. The minutes of the proceedings indicate that five rebuttal witnesses testified in a period of less than 45 minutes. In addition, counsel made closing arguments and the trial judge instructed the jury. Pursuant to Ariz.R.Crim.P. 31.8(f), the parties prepared statements of the proceedings, and the trial court held a hearing to resolve any differences regarding their recollection of the proceedings. Wilkinson has failed to demonstrate that this procedure violated his constitutional rights, or that he was prejudiced by the lack of a verbatim transcript. See Norvell v. Illinois, 373 U.S. 420, 424 (1963) (where trial transcript is not available due to death of court reporter, some practical accommodation must be made).
 
 IV. Judicial Bias
 
 12
 Wilkinson asserts that he was denied due process at both trial and sentencing because Judge Robert Roylston, the trial judge, was biased against him. To support this allegation, Wilkinson presented affidavits from his appellate attorneys, John and James Quigley. According to the affidavits, during a conversation several months after Wilkinson was sentenced, Judge Roylston recounted the general facts of Wilkinson's case (although he could not remember Wilkinson's name) and stated that he believed that the defendant in the case [Wilkinson] might have been the "Blue Baron" rapist, a serial rapist in the Tucson/University of Arizona area, because the rapes ceased after the defendant [Wilkinson] was arrested.
 
 
 13
 Wilkinson has not demonstrated that Judge Roylston's comments, made in an informal conversation six months after Wilkinson was sentenced, deprived him of a fair trial or a fair sentencing proceeding. There is no evidence that Judge Roylston exhibited any bias against Wilkinson during trial or sentencing. Wilkinson therefore is not entitled to habeas relief on this claim. See Lang v. Callahan, 788 F.2d 1416, 1418 (9th Cir.1986) (criminal defendant has a right to an impartial judge; nevertheless, when evaluating a claim of judicial bias, this court must examine the judge's allegedly improper comments in the context in which they were made) (citations omitted).
 
 V. Denial of Fair Trial by Impartial Jury
 
 14
 Wilkinson contends that he was denied a fair trial because the state attempted to give the jury the impression that he was being tried for sex offenses, instead of burglary and assault. In particular, Wilkinson points to (1) testimony by police-officer witnesses that they were assigned to a sex-crime unit, (2) Officer Turner's testimony that Wilkinson's fly was open when he stepped out of his truck on the night the crimes occurred, (3) admission of evidence regarding the "previous open-fly incident involving [Wilkinson] near the Aboud residence," (4) testimony that the residents of the nearby apartment complex where the windows were broken were female university students, and (5) the giving of a jury instruction defining the elements of rape.
 
 
 15
 Habeas relief may be granted on the basis of improper evidentiary rulings or jury instructions only when such errors render the state proceeding so fundamentally unfair as to violate due process. Estelle v. McGuire, 112 S.Ct. 475, 482 (1991) (jury instructions); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.1985) (admission of evidence), cert. denied, 478 U.S. 1021 (1986). Wilkinson has failed to demonstrate either that any of the evidentiary rulings or jury instructions were erroneous, or that any alleged error rendered his trial fundamentally unfair. Therefore, his claim for habeas relief fails.
 
 VI. Double Jeopardy
 
 16
 Wilkinson asserts that his fifth amendment right against double jeopardy was violated when the prosecution introduced a hatchet as evidence to support charges of both armed burglary and assault with a deadly weapon. He contends that, to be convicted of both offenses, he would have to have used two different weapons. This claim is frivolous; the state's introduction of a single weapon as evidence of Wilkinson's commission of two separate offenses simply does not implicate the Constitution's double jeopardy clause.
 
 VII. Arizona Supreme Court's Denial of Review
 
 17
 Wilkinson challenges the Arizona Supreme Court's decision to deny his petition for review on direct appeal. This claim is also frivolous. The Arizona Court of Appeals addressed all of the issues he raised on direct appeal. The Arizona Supreme Court's decision to deny review did not violate any of Wilkinson's constitutional rights.
 
 VIII. Alleged State Law Errors
 
 18
 Wilkinson challenges the following evidentiary rulings by the state trial court:
 
 
 19
 (1) admission of evidence of other bad acts, i.e. his arrest outside the Aboud residence four months prior to the crimes charged and the window-breaking incident at a nearby apartment complex the night of the crimes charged;
 
 
 20
 (2) admission of a hospital emergency room report stating that "Pt. reported to have cut R thumb on glass," and admission of Officer Harris's testimony regarding his comparison of Wilkinson's shoe with the footprint outside Aboud's bedroom window;
 
 
 21
 (3) grant of state's motion in limine precluding Wilkinson from calling Officer Turner as a witness for the purpose of impeaching his credibility;
 
 
 22
 (4) denial of Wilkinson's motion for a jury view of the crime scene;
 
 
 23
 (5) prosecutor's alleged comment during rebuttal argument implying that trial would be bifurcated and Wilkinson's sanity would be determined in later proceedings.
 
 
 24
 In addition, Wilkinson argues that the trial court erred by giving a rape instruction because the evidence was insufficient to support such an instruction.
 
 
 25
 Evidentiary rulings and jury instructions are generally questions of state law, which are not cognizable in federal habeas proceedings. Estelle v. McGuire, 112 S.Ct. at 480 ("it is not the province of a federal habeas court to reexamine state court determinations on state law questions"); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.1991) (this court is "not a state supreme court of errors; [it does] not review questions of state evidence law"). Nevertheless, Wilkinson asserts that the trial court's rulings violated his rights to due process and a fair trial. We disagree. Having reviewed the state court records, we conclude that none of the alleged violations of state law amounts to a deprivation of due process. Accordingly, these claims are not cognizable in a federal habeas petition. See id.
 
 
 26
 IX. District Court's Denial of an Evidentiary Hearing
 
 
 27
 Wilkinson contends that the district court erred by failing to hold an evidentiary hearing on his habeas petition. This contention fails. The district court was not required to hold an evidentiary hearing because Wilkinson's allegations, even if true, do not entitle him to relief. See Townsend v. Sain, 372 U.S. 293, 312-13 (1963), partially overruled on other grounds by Keeney v. Tamayo-Reyes, 112 S.Ct. 1715, 1717 (1992).[1]
 
 
 28
 X. District Court's Delay in Deciding Habeas Petition
 
 
 29
 Finally, Wilkinson argues that the district court's three-year delay in ruling on his habeas petition deprived him of due process. Although there is no apparent reason for the magistrate judge's delay in considering Wilkinson's petition, the record indicates that, for more than two years after all the pleadings had been filed, Wilkinson failed to inquire about the status of his habeas petition. Moreover, Wilkinson's petition ultimately was determined to be meritless. Accordingly, the delay in ruling on the petition did not deprive him of due process.
 
 
 30
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Moreover, the record on appeal shows that the district court independently reviewed all relevant portions of the state court record in rejecting Wilkinson's claims. See Reiger v. Christensen, 789 F.2d 1425, 1428 (9th Cir.1986) (if habeas petition is denied without an evidentiary hearing, record must show that district court independently reviewed all relevant portions of the state court record)