21 F.3d 1116
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James William TATLIS, Petitioner-Appellant,
v.
Eddie YLST, Warden; Attorney General of California,
Respondents-Appellees.
 No. 91-56420.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 5, 1994.*
Decided April 13, 1994.
 
 Before: POOLE, BEEZER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 James William Tatlis, a California state prisoner, appeals pro se the district court's denial of his 28 U.S.C. Sec. 2254 habeas petition challenging his conviction for rape, oral copulation, and false imprisonment. Tatlis contends that: (1) he was denied the effective assistance of counsel at trial; (2) his due process rights were violated by the admission of hearsay evidence; and (3) the prosecutor committed misconduct during his closing argument. We have jurisdiction under 28 U.S.C. Sec. 2253. We review de novo, Hendricks v. Zenon, 993 F.2d 664, 668 (9th Cir.1993) and affirm in part and reverse and remand in part.
 
 Ineffective Assistance of Counsel
 
 3
 Tatlis contends that he was denied the effective assistance of counsel because his trial counsel failed to present exculpatory scientific evidence. In addition, Tatlis contends that the district court erred in denying this claim without conducting an evidentiary hearing. Tatlis' contention concerning the lack of an evidentiary hearing has merit.
 
 
 4
 "A habeas petitioner is entitled to an evidentiary hearing on a claim if (1) the petitioner's allegations, if proved, would entitle him to relief, and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir.1992). If the petition raises a mixed question of fact and law, the district court must independently review all the relevant portions of the state court record before denying the request for an evidentiary hearing. See Hamilton v. Vasquez, 882 F.2d 1469, 1470-71 (9th Cir.1989); Lincoln v. Sunn, 807 F.2d 805, 808 (9th Cir.1987); Reiger v. Christensen, 789 F.2d 1425, 1428-29 (9th Cir.1986). In addition, if the issue relies on evidence outside the trial transcript, the district court may be required to hold an evidentiary hearing. Hamilton, 882 F.2d at 1473; see also Hendricks, 974 F.2d at 1109-10 (remanding ineffective assistance of counsel claim for evidentiary hearing because unable to resolve issue on record alone).
 
 
 5
 An ineffective assistance of counsel claim presents a mixed question of fact and law. See Hendricks, 974 F.2d at 1103; Reiger 789 F.2d at 1428. To obtain relief for a claim of ineffective assistance of counsel, a defendant must meet the two requirements enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Hendricks, 974 F.2d at 1109. First, a defendant must show that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88. Second, a defendant must show that counsel's deficient performance prejudiced the defense. Id. at 692. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.
 
 
 6
 Here, Tatlis argues that his trial counsel, Andrew Rubin, was ineffective because he failed to call a forensic scientist, David Sugiyama, as an expert witness. Tatlis claims that Sugiyama would have testified that Tatlis could be eliminated as a possible semen donor from a vaginal sample taken from Carole Taylor, one of the two victims.[1]
 
 
 7
 Although Tatlis' ineffective assistance of counsel claim presents a mixed question of fact and law, see Hendricks, 974 F.2d at 1103; Reiger 789 F.2d at 1428, the district court failed to independently review all the relevant portions of the state court record before denying Tatlis' request for an evidentiary hearing, see Hamilton, 882 F.2d at 1471; Lincoln, 807 F.2d at 808. The magistrate judge's report and recommendation, which was subsequently adopted by the district judge, relies on Rubin's declaration in denying Tatlis' ineffective assistance of counsel claim. However, the report and recommendation is devoid of any reference to the Sugiyama declaration even though his declaration conflicts with Rubin's declaration.[2]
 
 
 8
 Without the benefit of an evidentiary hearing to resolve this factual dispute, we cannot determine whether Tatlis would be entitled to relief on his ineffective assistance of counsel claim. See Hamilton, 882 F.2d at 1473. With respect to the prejudice prong, Sugiyama indicated that he held to his original exculpatory test results in connection with Carole Taylor. Although Sugiyama also agreed with the later test results by the prosecution, his testimony may have been sufficient to show reasonable doubt. See Thomas v. Goldsmith, 979 F.2d 746, 750 n. 2 (9th Cir.1992) (emphasizing the importance of semen evidence for its exculpatory potential in sexual assault cases). Furthermore, the record is silent as to why Sugiyama missed a large semen stain on the sheet even though he apparently examined this sheet in connection with his initial testing.
 
 
 9
 In addition, we cannot determine whether counsel's decision was reasonable without the benefit of an evidentiary hearing, because of the factual dispute between the two declarations. See Hendricks, 974 F.2d at 1103, 1109-10. The record reveals that Rubin intended to call Sugiyama as an expert witness throughout the majority of the trial. On June 3, 1987, both defense counsel and the prosecution indicated that they needed a recess in order to allow their experts to conduct further lab work. The court continued the trial until June 8, 1987. On June 8, 1987, the defense rested without any testimony from the expert witnesses. With the exception of Rubin's own declaration, the record is silent as to the reason neither the defense nor the prosecution presented expert testimony. Although Rubin claims that he did not call Sugiyama because the prosecution's test results were "devastating," Sugiyama's declaration only indicates that his original test results eliminated Tatlis while the prosecution's test results did not. Furthermore, these "devastating" test results were apparently never produced in either the state or federal proceedings. Without the benefit of an evidentiary hearing, we cannot determine whether Rubin's failure to call Sugiyama as a witness was reasonable. See id. at 1109-10.
 
 
 10
 Moreover, the state court trier of fact did not conduct an evidentiary hearing to resolve these factual disputes. See id. at 1103. Therefore, we reverse the district court's denial of Tatlis' ineffective assistance of counsel claim and remand for an evidentiary hearing. See id. at 1110.
 
 Due Process
 
 11
 Tatlis contends that the trial court violated his due process rights by admitting the hearsay testimony of a witness. This contention lacks merit.
 
 
 12
 "A state court's evidentiary ruling is grounds for federal habeas corpus relief only if it renders the state proceeding so fundamentally unfair as to violate due process." Bueno v. Hallahan, 988 F.2d 86, 87 (9th Cir.1993) (per curiam); see also Estelle v. McGuire, 112 S.Ct. 475, 480 (1991) (reemphasizing that federal habeas court may not reexamine state court determinations on state law questions). The Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly. See McGuire, 112 S.Ct. at 482. "The admission of inculpatory testimony violates due process only if there are no permissible inferences the jury may draw from the evidence and the testimony is of such quality as necessarily prevents a fair trial." Henry v. Estelle, 993 F.2d 1423, 1427 (9th Cir.1993).
 
 
 13
 Here, Tatlis contends that the trial court erred in admitting the hearsay testimony of Amanda Bickell concerning a telephone call she received approximately one month after the incident occurred. Tatlis argues that the foundation was insufficient to establish that he was the caller.
 
 
 14
 Contrary to Tatlis' argument, there was more than sufficient foundational evidence to submit the issue of the caller's identity to the jury. Outside the presence of the jury, Amanda Bickell testified that the caller identified himself as "Jimmy" and "the person accused of raping [her] friends." Ms. Bickell further testified that the caller was familiar with the dates and names of the parties involved, was aware of the potential sentence of twenty-five years, alluded to his prior criminal record, and indicated that his family in Boston was very upset. The jury could draw a rational inference that Tatlis was the caller. Accordingly, the district court properly denied Tatlis' due process claim as the admission of Amanda Bickell's testimony did not render the trial fundamentally unfair. See Bueno, 988 F.2d at 87.[3]
 
 Prosecutorial Misconduct
 
 15
 Tatlis contends that the prosecutor committed misconduct during his closing argument by appealing to the passions of the jurors, expressing personal beliefs concerning the case, and shifting the burden of proof. These contentions lack merit.
 
 
 16
 To obtain relief for a claim of prosecutorial misconduct, the petitioner must show that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (explaining that fundamental unfairness requires more than that prosecutor's remarks were undesirable or even universally condemned). In order to determine whether prosecutorial misconduct occurred, it is necessary to examine the entire proceedings and place the prosecutor's remarks in context. See Greer v. Miller, 483 U.S. 756, 765-66 (1987); Hall v. Whitley, 935 F.2d 164, 165 (9th Cir.1991) (per curiam). During closing argument, the prosecutor has wide latitude, including the freedom to argue reasonable inferences based on the evidence. United States v. Molina, 934 F.2d 1440, 1445 (9th Cir.1991). If the trial court gives the jury a curative instruction, it is presumed that the jury will follow that instruction and disregard inadmissible evidence inadvertently presented to it. Miller, 483 U.S. at 766 n. 8.
 
 
 17
 Here, Tatlis argues that the prosecutor's conduct violated due process on three separate occasions during closing argument. First, Tatlis contends that the prosecutor appealed to the passions of the jury by pointing an unloaded gun at one of the jurors and asking the jurors to imagine how the victims felt. While the prosecutor's actions were improper and may even constitute misconduct, we cannot find that they so infected the trial as to render the conviction fundamentally unfair. See Darden, 477 U.S. at 182-83. The prosecutor drew a reasonable inference from the evidence, namely, that the two victims did not resist the attack because of the threat of the gun. See Molina, 934 F.2d at 1445. Moreover, the trial court gave the jury a curative instruction by advising them not to be influenced by sympathy, passion or prejudice. See Miller, 483 U.S. at 766 n. 8 (emphasizing the importance of curative instructions). Thus, although the prosecutor's conduct was improper, it was not of sufficient significance to deprive Tatlis of a fair trial. See id. at 765.
 
 
 18
 Second, Tatlis argues that the prosecutor improperly expressed his personal belief by vouching for the credibility of the two victims. Towards the end of his closing argument, the prosecutor stated that although it was possible that two women could fabricate a story, the prosecutor chose to believe that the two victims were telling the truth.
 
 
 19
 While prosecutorial vouching for the credibility of witnesses is improper, see Molina, 934 F.2d at 1444-45, the prosecutor appeared to be merely drawing reasonable inferences from the evidence, by emphasizing the testimony of the two victims, see id. at 1445. The prosecutor also advised the jury that his personal belief was irrelevant and the trial court instructed the jury that the statements made by the attorneys are not evidence. See Miller, 483 U.S. at 766 n. 8. Although the prosecutor's comments were not entirely proper, they did not render the trial fundamentally unfair. See Darden, 477 U.S. at 183.
 
 
 20
 Finally, Tatlis contends that the prosecutor impermissibly shifted the burden of proof by arguing that the defense had not been able to impeach the two victims. A prosecutor's comments concerning a defendant's failure to refute the testimony of a witness does not shift the burden of proof unless they implicate the defendant's right not to testify. See United States v. Williams, 990 F.2d 507, 510 (9th Cir.), cert. denied, 114 S.Ct. 333 (1993). Here, the prosecutor only referred to defense counsel's inability to impeach the victims' testimony. The prosecutor did not implicate Tatlis' fifth amendment right against self-incrimination because he did not refer to Tatlis' failure to testify. Accordingly, the prosecutor's comments were proper and did not shift the burden of proof. See id.
 
 Conclusion
 
 21
 The district court's denial of Tatlis' habeas petition is affirmed with respect to his claims of inadmissible evidence and prosecutorial misconduct. The district court's denial of Tatlis' habeas petition is reversed with respect to his ineffective assistance of counsel claim. We remand this case to the district court for an evidentiary hearing on Tatlis' claim of ineffective assistance of counsel.
 
 
 22
 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, Tatlis' request for oral argument is denied. In addition, Tatlis' request for injunctive relief which would enable him to be available for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The record does not reveal the existence of any semen evidence, either exculpatory or inculpatory, with respect to the other victim, Noelle Kinney
 
 
 [2]
 Rubin states that further testing by the prosecution and Sugiyama revealed errors in the initial Sugiyama test results, the results were devastating to the defense, and that Sugiyama apologized for the error and told Rubin that he now believed that Tatlis was the individual who committed these crimes. On the other hand, Sugiyama states that he merely reviewed the prosecution's laboratory results on a sheet recovered as evidence in this case. He states that he concurred with the prosecution's results which indicated that Tatlis could not be eliminated as a donor of the semen detected on the sheet. However, Sugiyama further states that he held to his opinion on his original test results for the vaginal sample collected from Carole Taylor
 
 
 [3]
 At trial and in his subsequent habeas proceedings, Tatlis argued that he was not the caller as he was incarcerated in the county jail and only allowed to make collect telephone calls. As Amanda Bickell testified that the call was direct, Tatlis argues he is entitled to an evidentiary hearing on this issue. However, Tatlis never presented any evidence to substantiate this claim at trial or in any of his subsequent state or federal proceedings. In addition, Tatlis has not shown cause for his failure to develop these facts in his state court proceedings or prejudice resulting from the failure. See Keeney v. Tamayo-Reyes, 112 S.Ct. 1715, 1721 (1992). Accordingly, the district court did not err in denying Tatlis' habeas petition without an evidentiary hearing. See id.; 28 U.S.C. Sec. 2254(d)